Argued and submitted May 7, 1986, affirmed December 30, 1987

# STATE OF OREGON,
*Respondent on Review,*

*v.*

# JAMES WAYNE KOSTA,
*Petitioner on Review.*

(TC C82-12-38992; CA A28823; SC S32356)

748 P2d 72

D. Lawrence Olstad, Portland, filed the petition and memorandum in response to questions of the court and argued the cause for petitioner on review.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the memorandum in response to questions of the court were Dave Frohnmayer, Attorney General and James E. Mountain, Jr., Solicitor General, Salem.

Before Peterson, Chief Justice, and Lent, Linde, Campbell, Carson and Jones, Justices.

CARSON, J.

Lent, J., concurred and filed an opinion in which Linde, J., joined.

Jones, J., concurred and filed an opinion in which Peterson, C. J., joined.

## CARSON, J.

This case presents three issues under Article I, section 9, of the Oregon Constitution:[1] (1) Did defendant have a protectable interest violated by an allegedly unlawful search of a package in transit where he was not a sender, an addressee, or an intended recipient of the package; (2) May police officers detain a package in transit without a warrant for purposes of exposure to a trained narcotics detection dog on the basis of reasonable suspicion that the package contains a controlled substance; and (3) May police search an automobile trunk for a package, previously tested positive for cocaine, which police observe being placed in the trunk? We hold that, under the facts of this case, the detention and inspection of the package, even if in violation of Article I, section 9, did not violate the Article I, section 9, rights of defendant; as a result, we need not reach the second issue. We answer the third issue in the affirmative.

## FACTS

The facts found by the trial court may be summarized as follows: In December 1982, the Portland Police Bureau received several anonymous telephone calls stating that packages of cocaine were shipped regularly from San Diego to Portland via Federal Express. The anonymous caller suggested that three persons were involved. The names given did not include defendant, but did include an individual named Hershel McGraw. On December 16, 1982, an anonymous telephone caller stated that a nine-by-nine inch package wrapped in brown paper and containing cocaine would be delivered by Federal Express to Portland from San Diego on December 17, 1982. The caller further added: "New names: Could be sent to Tracy Van Horn," at a specified address. Acting on this information, the police intercepted a package on a Federal Express delivery truck that was addressed to John Morino in care of Van Horn at the address specified by the anonymous telephone caller. The police then arranged for the services of the

---

[1] Article I, section 9, of the Oregon Constitution states:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

Hillsboro Police Department's trained police dog to verify their suspicions regarding the presence of a controlled substance in the package. Approximately two hours later, the police dog arrived and detected the suspected package placed at random among other packages. The police then obtained a telephonic warrant, opened the package and field-tested the contents, which tested positive for cocaine.

The package was then resealed, and police officers, posing as Federal Express employees, delivered the package to Van Horn. Van Horn was arrested when he identified himself and admitted that he knew what was in the package. He said that the package was not intended for him and that he would cooperate in the police investigation. He then telephoned McGraw and stated that he could not deliver the package because his automobile was disabled. McGraw advised Van Horn that arrangements had been made to have a person come and pick up the package. Soon afterwards, defendant arrived alone in his automobile, pulled up in Van Horn's driveway and left his motor and lights on. Defendant went up to Van Horn's doorway, took the package from Van Horn, stated that he knew what was in the package, locked the package in his automobile trunk and began to drive away. Police vehicles then converged in front and in back of defendant's automobile; the officers arrested defendant, took his keys and opened the locked trunk without defendant's consent. Twenty minutes later, officers removed the package from the trunk, along with an alkaloid kit (a device that may be used to test cocaine).

The trial court judge found that defendant was neither the addressee nor the intended ultimate recipient of the package, but that defendant merely picked up the package for someone else. The trial court judge stated that "the evidence which is uncontroverted in the record is that he [defendant] stated he received a phone call from someone by the name of Mike Brown who offered him $50 if he [defendant], would pick up the package for him." The trial court denied the motion to suppress, and, subsequently, in a trial before the court, found defendant guilty of possession of a controlled substance.

## DISCUSSION

*A. Initial Detention of the Delivery Truck and Exposure of Package to Police Narcotics Detection Dog.*

As this court repeatedly has stated, if an intrusion is a "search" or a "seizure," it requires "probable cause and a search warrant or separate justification under one of the few, carefully circumscribed exceptions to the warrant requirement" of Article I, section 9, of the Oregon Constitution. *See, e.g., State v. Owens,* 302 Or 196, 205-06, 729 P2d 524 (1986).

■ We again note that, unlike the Fourth Amendment exclusionary rule which has been based on deterring police misconduct, exclusions under Article I, section 9, have been based on the personal right to be free from an unlawful search or seizure. *State v. Tanner,* 304 Or 312, 315, 745 P2d 757 (1987); *State v. Davis,* 295 Or 227, 231-37, 666 P2d 802 (1983); *State v. Laundy,* 103 Or 443, 494, 204 P 958, 206 P 290 (1922). The question, therefore, is whether defendant's personal Article I, section 9, rights were violated. If defendant's rights were not violated by the initial detention and exposure to the police dog, "defendant cannot complain for the reason that if the right of any person was violated it was that of * * * some other third person, and not that of the defendant." *State v. Laundy, supra,* 103 Or at 498.

Article I, section 9, protects both privacy and possessory interests. *State v. Tanner, supra,* 304 Or at 318-322. A person need not be the owner of a container or package to have a privacy interest therein. *Id.* A " 'seizure' occurs when there is a significant interference with a person's possessory or ownership interests in property. The seizure of an article by the police and the retention of it (even temporarily) is a significant intrusion into a person's possessory interest in that 'effect.' " *State v. Owens, supra,* 302 Or at 207. Moreover, as we noted in *State v. Elkins,* 245 Or 279, 290, 422 P2d 250 (1966), the fact that a seized item may be contraband does not prevent a defendant from having a cognizable property interest, as well as a privacy interest, in the item.

■ In the present case, we need not determine the bounds of an individual's Article I, section 9, interests to conclude that defendant lacked any privacy or possessory interest in the package at the time when the police intercepted the

Federal Express truck and subsequently exposed the package to the trained narcotics detection dog. Although defendant argues that he "was injured by the challenged police conduct," he fails to articulate any basis for his alleged privacy interest to be free from governmental intrusion into the package, given that he did not cause the package to be transported and that he was not the addressee, the intended recipient[2] or an individual with an otherwise identifiable interest at the time of the detention of the package. Consequently, there is no basis for defendant to assert a possessory or ownership interest in the package during transit. We hold that defendant's Article I, section 9, interests were not violated by the police conduct involving the stop of the truck and the exposure of the package to the police dog.[3]

### B. Police Search of Defendant's Vehicle.

■   The police search of defendant's automobile is the third issue presented. The state concedes that there is no issue whether defendant had protectable Article I, section 9, interests after defendant came into possession of the package. Defendant argues that the warrantless search of his automobile was unlawful because it was made without exigent circumstances other than those created by the police. Defendant made this argument before our decision in *State v. Brown*, 301 Or 268, 721 P2d 1357 (1986). *See also State v. Kock*, 302 Or 29, 725 P2d 1285 (1986). *Brown* compels the conclusion that the search of defendant's automobile trunk was constitutionally valid.

In *Brown*, we held for the first time that there is an

---

[2] There was testimony during the suppression hearing that McGraw had said to Van Horn that the person coming out to pick up the package "was going to end up with it." The trial court concluded that that statement was insufficient to establish a protectable interest in this defendant.

[3] Although defendant does not clearly raise federal issues, we hold that defendant also lacks assertible Fourth Amendment rights to challenge these particular police actions. *Rawlings v. Kentucky*, 448 US 98, 106, 100 S Ct 2556, 65 L Ed 2d 633 (1980) (defendant had no "standing" with respect to *his* property located in his companion's purse because he "had no legitimate expectation of privacy in [the] purse at the time of the search").

We emphasize that we express no opinion as to the second issue presented: The extent to which Oregon law authorizes and the Oregon Constitution limits warrantless detentions of property without probable cause and exposure of packages or containers containing suspected contraband to trained narcotics detection dogs.

"automobile exception" to the warrant requirement of Article I, section 9, of the Oregon Constitution. The exception is established if: (1) "[t]he automobile is mobile at the time it is stopped by police or other governmental authority," and (2) "[p]robable cause exists for the search of the vehicle." 301 Or at 274. We adopted a *per se* exigency rule" for mobile automobiles.

As to the first of the two elements of the automobile exception, it does not matter that defendant was physically unable to move the automobile after the stop: All the trial court was required to find (and did find) was that "the car was mobile at the time it was stopped by the police." *Cf. State v. Brown, supra,* 301 Or at 270, 278 (defendant handcuffed during entire search).

As to the second element, before they searched defendant's automobile trunk, the officers already had tested the package's contents pursuant to a warrant and had observed defendant take that same package and place it in his automobile trunk. These facts certainly constitute probable cause. Thus, the present search was justified.[4]

Defendant argues that the police created their own "exigency" by waiting for defendant to put the package in his automobile rather than arresting him when he took the package from Van Horn. That is, defendant argues that the police merely were attempting to avoid the warrant requirement of Article I, section 9, and the Fourth Amendment by "deliberately pass[ing] up a prior convenient opportunity to arrest the defendant so that they might later arrest him in * * * his car." *Cf.* 3 LaFave, Search and Seizure 142 (1987). It is true that "[t]he police cannot weave together a web of information," *State v. Matsen/Wilson,* 287 Or 581, 587, 601 P2d 784 (1979), then rely on the automobile exception when the suspect conveniently enters a vehicle.

In this case, however, the facts do not support the

---

[4] The search of defendant's automobile trunk also is constitutionally valid under the Fourth Amendment. *United States v. Ross,* 456 US 798, 825, 102 S Ct 2157, 72 L Ed 2d 572 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search"); *Scott v. United States,* 436 US 128, 98 S Ct 1717, 56 L Ed 2d 168 (1978) (police searches tested under a standard of objective reasonableness without regard to the underlying intent of motivation of the officers involved).

conclusion that the officers "bootstrapped" themselves into a search of defendant's automobile. Defendant points to no evidence from which we could infer that the police were "engaged in a deliberate scheme to evade the [warrant] requirement." *Cf.* 3 LaFave, *supra* at 143. Police did not know of defendant's identity before his arrival at Van Horn's home. The only "prior opportunity" to arrest defendant was during the period in which he took the package from Van Horn and got back into his automobile with the motor left running. We cannot infer bad motive on the part of the officers merely because they might have arrested defendant during the brief period between his identification as a suspect and his return to his automobile.

The decision of the Court of Appeals is affirmed for the reasons stated herein. The decision of the trial court is affirmed.

**LENT, J.,** concurring.

I have written several times that when this court interprets a statute, a due regard for *stare decisis* compels us to adhere to that interpretation. If the legislature believes that the court has erred in statutory interpretation, the legislature has the power to rectify the error. On the other hand, when we interpret the state constitution, that interpretation can only be changed by others by the cumbersome process of constitutional amendment. It is for that reason that I have written in the past that when we are convinced that we have erred in constitutional interpretation we should rectify the error.

In *State v. Brown,* 301 Or 268, 721 P2d 1357 (1986), over the dissent of Justice Linde and myself, this court adopted the "automobile exception" in interpreting the Oregon Constitution, Article I, section 9. I hope that someday that error will be rectified by this court. Until that time, the rule of the majority in *Brown* requires the result reached in the lead opinion in this case.

Linde, J., joins in this concurring opinion.

**JONES, J.,** concurring.

I concur in the result but disassociate myself from the notion that the exclusionary rule under Article I, section 9, is now or ever has been based on a personal right of an accused.

*State v. Tanner,* 304 Or 312, 745 P2d 757 (1987) (Jones, J., dissenting).

Peterson, C. J., joins in this concurring opinion.