Argued and submitted May 24, affirmed August 21, reconsideration denied
October 9, petition for review denied December 17, 1991 (312 Or 527)

# STATE OF OREGON,
*Respondent,*

*v.*

# RAYMOND ANTHONY CARRILLO,
*Appellant.*

## (C89-10-36005; CA A64876)

816 P2d 654

Phillip M. Margolin, Portland, argued the cause for appellant. With him on the brief was Margolin & Margolin, Portland.

Kaye E. Sunderland, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

## EDMONDS, J.

Defendant appeals his convictions for burglary in the first degree, ORS 164.225, attempted rape, ORS 161.405 and ORS 163.375, and two counts of assault in the fourth degree. ORS 163.160. He assigns as error the trial court's admission of evidence that defendant had told the victim, his wife, that he had earlier killed a girlfriend. We affirm.

■    The charges arose from an incident involving defendant, his estranged wife and Yeater, wife's boyfriend. Wife testified that she and defendant had been married for two years. In May, 1989, they were living in Phoenix, Arizona. She left him and returned to Oregon, because she was afraid of him. In late May and early June, 1989, they resumed cohabitation in Oregon. Defendant threatened to beat her up, so she left him again. She started dating Yeater, but in July she moved back with defendant. In August, after he tried to strangle her, she left again and moved back in with Yeater. While living there, she began receiving telephone calls from defendant, threatening her and Yeater. She testified that, on October 16, 1989, defendant entered Yeater's apartment and attempted to rape her while Yeater was at work. She said that she had heard a knock on the door and had looked through the peephole and had seen Marshall, a friend of defendant's. After she opened the door, Marshall left quickly and defendant forced his way into the apartment.

Defendant's version was quite different. He testified that wife invited him to Yeater's apartment but told him not to come over before 11:00 p.m., because Yeater would be there after that. After Marshall dropped him off at Yeater's apartment, he knocked on the door and wife invited him in. He denied attempting to rape her.

During direct examination by the state, wife testified:

"Q   Did [defendant] tell you what had happened to his previous wife?

"A   Well, he didn't say it was his wife. He said it was more or less his girlfriend.

"Q   Did he say what happened to her?

"A   Well, he said that he was trying to leave and she kept running around the pickup that he was in, and he ran over

her. She was in front of the truck when he started to go. And I don't really know exactly how it happened, but he said that he ran over her.

"Q   Did she end up dead?

"A   Yes.

"Q   And did he end up in a penitentiary as a result of that?

"A   Yes.

"Q   Okay. Were you aware of that after you were married to Mr. Carrillo?

"A   Yes."

Defendant argues that the trial court erred by admitting evidence that defendant had killed his girlfriend. The state argues that the evidence was relevant to prove that wife was afraid of defendant and would not have consented to his entry into the apartment.

OEC 401 provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The evidence need only "slightly increase or decrease the probability of the existence of any material fact." *State v. Gailey,* 301 Or 563, 567, 725 P2d 328 (1986). In order to prove burglary in the first degree, the state was required to prove that defendant unlawfully entered the apartment. One of the material facts in dispute was whether wife consented to defendant's entry into the apartment. Evidence of what defendant had told her could make it less likely that she would have consented to his entry. *See State v. Moen,* 309 Or 45, 68, 786 P2d 111 (1990). We cannot say that the trial court abused its discretion in admitting the evidence under OEC 401.

■   Next, defendant argues that, even if the evidence was relevant, it was inadmissible under either OEC 403 and OEC 404(3),[1] because the probative value was outweighed by

---

[1] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the

prejudice to him. At trial, defendant objected to wife's testimony on the grounds of hearsay and relevance. He did not object under either OEC 403 or OEC 404(3). However, he argues that, under *State v. Johns,* 301 Or 535, 725 P2d 312 (1986), "all 404(3) objections are relevance objections" and "the objection here on relevance [under OEC 401] would be the original 404(3) objection." We do not read *Johns* to support that proposition. In *State v. Sanger,* 89 Or App 493, 749 P2d 1202 (1988), we held that an objection on the basis of relevance does not preserve an objection under OEC 404(3). *See also State v. Carskadon,* 86 Or App 421, 739 P2d 1054 (1987).

Affirmed.

---

issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."