# STATE OF OREGON,
*Respondent,*

*v.*

# EUGENE IRVIN COLLIER,
*Appellant.*

(91D100326, 91D100327; CA A72916)

861 P2d 397

James L. McGehee argued the cause for appellant. With him on the brief was McGehee & Meiners.

Kaye E. Sunderland, Assistant Attorney General, argued the cause for respondent. With her on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General.

Before Richardson, Chief Judge, and Deits and Durham, Judges.

DURHAM, J.

## DURHAM, J.

Defendant was convicted of "illegal hunting of a game mammal closed season" and "illegal possession of a game mammal closed season." He assigns error to the court's denial of his motion to suppress, refusal to grant a mistrial after improper testimony and admission of testimony about a threat defendant made to a witness. We affirm.

Defendant argues that the warrant to search his home was invalid, because it was based on information obtained during an unlawful search, and because the supporting affidavit did not provide probable cause to believe that any evidence of the offense would be found at defendant's home. According to the affidavit, a person reported to State Police Officer Rizzo that he saw two men packing out an elk head and meat on Lookout Mountain Road, near Silver Falls State Park, and that one of the men identified himself and said that he had shot a small elk. The informant described the two men, mentioned that one of the men was carrying a video camera case and gave the description and license plate number of the truck in which the men drove away. That afternoon, after determining that the truck was registered to defendant, Rizzo went to defendant's home. He noted that defendant's appearance and dress matched that of one of the men that the informant described. Defendant told Rizzo that he owned a truck like the one the informant described and had driven it that morning on Lookout Mountain Road, but refused to let him see it. Rizzo saw a video camera and case on defendant's floor. Rizzo and Officer Allison then drove with the informant to find the site of the kill. After tracing footprints in the snow back from the point at which the informant encountered the men, they found the remains of a freshly killed elk. The site was located on property owned by defendant, adjacent to Silver Falls State Park.

■ Defendant contends that the warrantless entry onto his land was an unlawful search. Article I, section 9, of the Oregon Constitution provides, in part:

> "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure * * *."

The threshold question is whether the conduct at issue is a search. *State v. Wacker*, 317 Or 419, 426, 856 P2d 1029 (1993). "If no privacy interest is implicated, no 'search' has occurred under Article I, section 9." 317 Or at 7.

> "[T]he privacy protected by Article I, section 9, is not the privacy that one reasonably *expects* but the privacy to which one has a *right.*" *State v. Campbell*, 306 Or 157, 164, 759 P2d 1040 (1988). (Emphasis in original.)

Article I, section 9, will protect a privacy interest in land outside the curtilage of an individual's dwelling. *State v. Dixson/Digby*, 307 Or 195, 208, 766 P2d 1015 (1988). However,

> "[a]n individual's privacy interest in land he or she has left unimproved and unbounded is not sufficient to trigger the protections of Article I, section 9. * * * A person who wishes to preserve a constitutionally protected privacy interest in land outside the curtilage must manifest an intention to exclude the public by erecting barriers to entry, such as fences, or by posting signs." 307 Or at 211.

Defendant's property was not fenced. He testified that "no trespassing" signs were posted, and that the roads into the property were barricaded. However, both Rizzo and the informant testified that they did not see any signs or barricades, and that they assumed they were on state park property. The informant testified that he had hunted in the area many times and had never seen "no trespassing" signs. The trial court found that Rizzo did not see any signs and made no conscious attempt not to see them. Defendant complains that the trial court improperly added a subjective component to the determination of whether a search has occurred. *See State v. Ainsworth*, 310 Or 613, 801 P2d 749 (1990). Defendant misses the relevance of the court's finding. If Rizzo and the informant could not see "no trespassing" signs while making no deliberate effort to avoid seeing them, and if there was no other manifestation of an intent to exclude, defendant did not adequately manifest an intention to exclude the public from his property. *See State v. Dixson/Digby, supra*, 307 Or at 211; *State v. Hitesman/Page*, 113 Or App 356, 361, 833 P2d 306, *rev den* 314 Or 574 (1992).

■■ Defendant also argues that the search warrant affidavit does not provide probable cause to believe that any

evidence of the offense would be found in his home. The affidavit does not say that the informant saw defendant and his son-in-law load the elk onto the truck. However, affidavits should be read in a common-sense, non-technical manner. *State v. Moylett*, 313 Or 540, 552, 836 P2d 1329 (1992). After reviewing the affidavit, we conclude that it contains facts that would lead a reasonable person to conclude that defendant transported elk meat by truck to his residence, and that officers would discover crime evidence there.

■ Defendant assigns error to the court's refusal to grant a mistrial after Rizzo testified that defendant denied consent to a search of his truck. We review the claim for abuse of discretion. *State v. Smith*, 310 Or 1, 24, 791 P2d 836 (1990). While testifying in a narrative form about his contact with defendant, Rizzo said:

> "I inquired a little bit about the pick-up, told him we had a license plate and described it to him, and he said 'yes' he did have a vehicle that met that description in his shop. We asked him if we could see it, and he would not allow us to see it."

The trial court sustained defendant's objection to this testimony but denied his request for a mistrial. Defendant argues that the comment required a mistrial.

■ In *State v. Green*, 68 Or App 518, 684 P2d 575, *rev den* 297 Or 601 (1984), we held that a police officer's comment on a defendant's refusal to submit to field sobriety tests amounted to compelled self-incrimination. Defendant argues that Rizzo's comment on defendant's refusal is analogous. Assuming arguendo that the comment was improper, the trial court did not abuse its discretion by denying a mistrial. Whether a trial court's denial of a motion for a mistrial constitutes an abuse of discretion depends on "the likelihood that the jury would draw a prejudicial inference from the comment." *State v. Madison*, 93 Or App 182, 187, 760 P2d 1384 (1988). In *Madison*, we held that a mistrial was not required, because the prosecutor's comment on the defendant's failure to testify was inadvertent, the defendant did not request a curative instruction and the risk of a prejudicial inference was slight. 93 Or App at 187. Here, defendant declined the court's offer of a curative instruction and the risk of prejudice was slight. In declining the court's offer of a

curative instruction, defendant's counsel noted that the comment was of a "low key nature" and that a curative instruction would more likely bring undue attention to the comment. The court did not err.

■ Finally, defendant assigns error to the court's decision to allow testimony about a threat defendant made to the informant. During the state's rebuttal, the trial court allowed the informant to testify that defendant approached him during a court recess and warned

> "that if he caught me off the road for three miles on either side, he'd kill me, and then told me to bank on it."

Defendant argues that the informant's testimony was irrelevant and prejudicial because it was "basically the last evidence that the jury heard." Evidence is relevant if it has

> "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401.

The state argues that the evidence was relevant to show defendant's bias against the informant.

> "To be relevant, evidence introduced to impeach a witness for bias or interest need only have a mere tendency to show the bias or interest of the witness." *State v. Hubbard*, 297 Or 789, 796, 688 P2d 1311 (1984).

The court concluded that defendant had called into question the informant's credibility, and that the evidence of the threat went to defendant's motive or bias for doing so. We agree. The court did not abuse its discretion.

■ Defendant argues that the testimony was not admissible, because the prosecution did not comply with the procedure in OEC 609-1 for admitting evidence of bias. He also argues that the testimony was inadmissible evidence of prior bad acts. OEC 404(3).[1] Defendant did not make those arguments to the trial court. We do not address them on appeal.

---

[1] OEC 404(3) provides, in part:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith."

*See State v. Carrillo*, 108 Or App 442, 446, 816 P2d 654, *rev den* 312 Or 527 (1991); OEC 103(1).[2]

Affirmed.

---

[2] OEC 103(1) provides, in part:

"Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and:

"(a) In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context."