Argued and submitted August 9, 1994, reversed and remanded February 15, petition for review denied July 5, 1995 (321 Or 340)

STATE OF OREGON,
*Appellant,*

*v.*

LUIS VALDOVINO TREVINO,
*Respondent.*

(C 92-07-34160; CA A78538 (Control))

STATE OF OREGON,
*Appellant,*

*v.*

JOEL VELASQUEZ AHUMADA,
aka Trinidad Ahumada,
*Respondent.*

(C 92-07-34159; CA A78539)

889 P2d 1317

Janet A. Klapstein, Assistant Attorney General, argued the cause for appellant. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Jesse Wm. Barton, Deputy Public Defender, argued the cause for respondent Luis Valdorino Trevino. With him on the brief was Sally L. Avera, Public Defender.

Thomas K. Coan argued the cause and filed the brief for respondent Joel Velasquez Ahumada.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

WARREN, P. J.

## WARREN, P. J.

Defendants were charged with multiple counts of delivery of a controlled substance and possession of a controlled substance. ORS 475.992. The state appeals a pretrial order suppressing evidence found in warrantless searches of different locations. We reverse and remand.

These facts are not in dispute. Portland police were investigating Stevens for distributing cocaine. On June 23, 1992, Officer Keist received information from a confidential informant that Stevens was going to Gresham that evening to purchase cocaine. Police set up surveillance on Stevens. Later that evening, Stevens left his home and drove to the home of Caraher, who was also known to police as a cocaine dealer. Stevens picked up Caraher and drove to the home of Melton, who joined them in Stevens' car. Police followed the car to Gresham, where it stopped at a restaurant. Stevens and Caraher entered the restaurant. Melton crossed a street and placed a call from a pay phone. After he made that call, he went to the parking lot of another business. A few minutes later, defendant Ahumada drove into that parking lot. Melton got into Ahumada's car for about a minute. Melton left and walked to the restaurant. Ahumada drove away. A few minutes later, Stevens, Caraher and Melton left the restaurant. Keist asked Gresham police officers to stop Stevens' car, because she believed that a cocaine transaction had occurred. The officers stopped Melton and asked if they could search him. Melton refused. The officers arrested Melton and found cocaine hidden in his underwear in a search incident to arrest.

In the meantime, other police were following Ahumada. They saw him drive to an apartment complex, but could not see which apartment he entered. About 30 minutes later, police, who by then knew about the cocaine found on Melton, saw Ahumada leave the apartment complex in a car that defendant Trevino was driving. Police stopped the car. Officer Gray spoke with Trevino and Officer Anderson contacted Ahumada. Anderson did not immediately arrest Ahumada. Anderson asked Ahumada whether he had any cocaine and then searched him. There is conflicting evidence about whether Ahumada consented to the search. Anderson found a bag containing cocaine behind Ahumada's genitals. He then arrested Ahumada. After advising Ahumada of his

*Miranda* rights, Anderson asked him more questions about the cocaine. Ahumada said that it belonged to Trevino. When Anderson told Gray that he found cocaine on Ahumada, Gray arrested Trevino. Gray seized from Trevino money and a Western Union money transfer receipt that had notations consistent with cocaine prices.

Later, defendants moved to suppress all evidence obtained in the searches. The trial court first concluded that Trevino and Ahumada had an interest in the cocaine seized from Melton.[1] It then reached the merits of defendants' claim that the officers unlawfully searched Melton. *See State v. Tanner*, 304 Or 312, 323, 745 P2d 757 (1987). The court determined that the officers did not have probable cause to arrest Melton, and that without the evidence illegally seized from him, Anderson and Gray did not have probable cause to arrest and search Ahumada and Trevino. It then granted the motion to suppress.

The state assigns error to the trial court's granting of the motion to suppress.[2] It argues that police had probable cause to arrest Melton and that, therefore, the evidence seized during and derived from that search should not have been suppressed. We do not reach the question of probable cause, because the threshold issue is whether the trial court correctly determined that defendants had a protected privacy or possessory interest in the cocaine seized from Melton. *State v. Tanner, supra*, 304 Or at 316. A defendant seeking to suppress evidence obtained in an illegal search of a third party, or evidence derived from that search, must show that he or she had a protected possessory or privacy interest in the evidence obtained in that search. Even if the search of Melton was unlawful, we conclude that the trial court erred, because

---

[1] At the close of the suppression hearing, the trial court concluded:

"[T]he defendants do have an interest in — in the contraband — that there was no sale as the state was suggesting, that they wouldn't have an interest."

The trial court characterized that statement as a finding and defendants argue that we are bound by it. *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968). However, whether defendants had a *protected* interest in the contraband seized from Melton is a conclusion of law, not a finding of fact. *See State v. Kosta*, 304 Or 549, 553, 748 P2d 72 (1987).

[2] Gray, Anderson and several other officers also searched Ahumada's apartment. The state does not assign error to the trial court's suppression of evidence found there.

defendants did not establish that the search of Melton violated a protected interest *they* had in the cocaine seized from him.

■        Article I, section 9, of the Oregon Constitution[3] protects both privacy and possessory interests. *State v. Kosta, supra* n 1, 304 Or at 553. Ahumada delivered cocaine to Melton. At the hearing on the motion to suppress, it was defendants' burden to establish that they had either a protected possessory interest in that contraband or a privacy interest in the place searched. *State v. MacDonald*, 105 Or App 102, 106, 803 P2d 1211 (1990), *rev den* 311 Or 433 (1991). Here, the only evidence about whether or not defendants had such a protected interest is the testimony of Anderson and Keist. Keist testified that Melton told her that the price of the cocaine he had obtained was $900. Melton also told her that he paid only $450 to Ahumada. Keist and Anderson testified that Melton said the rest of the cocaine was "fronted" to him. Counsel for Ahumada asked Keist to explain a "front" transaction:

"A.   A front transaction is when the supplier of the drugs [gives them] to the person who's requested them without providing money for the drugs. They simply give them the drugs with a promise to pay at a later time.

"Q.   If they do not pay, the person is entitled to their drugs back, is that correct?

"A.   That would be an individual thing.

"Q.   So if the person did — was unable to — the person receiving the drugs on the front is unable to sell the drugs, they would be required to return the drugs to the person who had given them to? [*sic*]

"A.   You could only presume that that kind of arrangement would occur.

"Q.   Okay. And either that — okay. So, they still — the person that fronts the drugs to the second party still has an interest in those drugs. Is that correct?

---

[3] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

"A.   Yes, that is correct."

That evidence is insufficient to establish that defendants had a protected possessory interest in the cocaine seized from Melton. Even if Keist's testimony suggests that, in some circumstances, a drug dealer may require the purchaser of fronted contraband to return any part of it that is not sold, there is no evidence that *Melton* promised to return any unsold portion of the cocaine to Ahumada or Trevino. At most, the evidence supports a conclusion that Melton made an unenforceable promise[4] to pay Ahumada the balance owing on the cocaine. Similarly, defendants' argument that they had a privacy interest in the cocaine fails. That argument is premised on their assertion that Ahumada *entrusted* the cocaine to Melton's care. For an entrustment to implicate a privacy interest protected under Article I, section 9, there must be evidence that defendants might reclaim the cocaine. *State v. Tanner, supra,* 304 Or at 323. Here, there is no such evidence.

Defendants failed to establish a protected interest in the cocaine seized from Melton. Therefore, even if the search of Melton was unlawful, it did not violate defendants' Article I, section 9, rights, because they did not have a protected interest in any evidence obtained from him. 304 Or at 316. The trial court erred in suppressing evidence obtained in the Melton search, and in relying on any unlawfulness of that search to suppress evidence found in the subsequent searches of Ahumada and Trevino. Because the trial court did not make findings and conclusions about the lawfulness of the subsequent searches of Ahumada and Trevino, we remand for a determination of whether evidence obtained from those searches should be suppressed.

Reversed and remanded.

---

[4] A promise to pay for contraband is legally unenforceable.