Argued and submitted June 29, 1994; resubmitted In Banc June 8, reversed and remanded in part; otherwise affirmed October 11, 1995, Morton's petition for review allowed January 23, 1996 (322 Or 489)

# STATE OF OREGON,
*Appellant,*

*v.*

# DEANN LORRAINE MORTON,
*Respondent.*

(10-93-01567B; CA A80443 (Control))

# STATE OF OREGON,
*Appellant,*

*v.*

# KENNETH MARK EVANS,
*Respondent.*

(10-93-01567A; CA A80444)
(Cases Consolidated)

904 P2d 631

In Banc

Jonathan H. Fussner, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Steven V. Humber, Deputy Public Defender, argued the cause for respondents. With him on the brief was Sally L. Avera, Public Defender.

LANDAU, J.

DeMuniz, J., concurring.

Richardson, C. J., concurring in part; dissenting in part.

## LANDAU, J.

In these cases consolidated for appeal, the state appeals from orders granting defendants' motions to suppress evidence obtained from an arrest made pursuant to an allegedly unauthorized warrant. We affirm in part and reverse in part.

The following facts are not in dispute. In December 1991, defendant Deann Morton was convicted for driving while suspended. ORS 811.175. That offense is a traffic infraction. ORS 153.505; ORS 811.175. Morton was ordered to pay a fine or appear in court on January 10, 1992. After she failed to do either, a Lane County municipal court issued a warrant for her arrest.

On February 2, 1993, a detective saw Morton associating with people whom he knew were under investigation for drug involvement, among them defendant Kenneth Evans. The detective arrested Morton pursuant to the 1992 warrant. Evans was handcuffed for "safety reasons." While Morton was being placed under arrest, a plastic container fell from her jacket. Morton denied knowing what was in the container, denied having ever seen it and denied ownership of the container. The detective opened the container and found methamphetamine and related paraphernalia. He then arrested Evans, searched him and seized a gun and other personal effects.

Morton and Evans were charged with unlawful delivery of a controlled substance. ORS 475.992(1)(b). Morton was also charged with unlawful possession of a controlled substance. ORS 475.992(4)(b). Both defendants moved to suppress all evidence of the methamphetamine and related paraphernalia seized during Morton's arrest. They argued that Morton's arrest was invalid, because the warrant on which it was based was void. According to defendants, the warrant was issued for Morton's failure to appear on a citation for a traffic *infraction*, and the statute authorizing warrants for failure to appear, ORS 153.560(1), applies only to citations for traffic *crimes*. Evans also argued that, independent of the problem with the warrant to arrest Morton, the state lacked probable cause to arrest him for the commission of any crime.

The state argued that ORS 153.560(1) authorizes warrants for failure to appear upon citations for both traffic infractions and traffic crimes. The state also argued that, in any event, defendant Morton cannot challenge the lawfulness of the seizure of the drugs and related paraphernalia, because she has disclaimed any knowledge of or interest in them. The state offered no such argument concerning defendant Evans.

The trial court heard arguments in both cases together and granted defendants' motions. As to Morton, the court concluded that the warrant to arrest her was void and her arrest unlawful, because ORS 153.560(1) does not authorize the issuance of warrants for failure to appear on a citation for a traffic infraction. As to Evans, the court also found that, because there was no testimony demonstrating that it was more probable than not that he had committed a crime, his arrest was unlawful.

The two cases were consolidated on appeal at the request of the state, which argued that the two cases presented the same legal issue.

The state assigns error to the suppression of the evidence of the methamphetamine and related paraphernalia in both cases. The state first argues that the trial court erred in granting defendant Morton's motion to suppress, because the issuance of the warrant for Morton's arrest was valid and because Morton did not claim a constitutionally protected privacy or property interest in the items seized. Morton responds that the warrant for her arrest was invalid and that no claim of interest in the items seized is required. We need not address the validity of the warrant to arrest Morton at this juncture, because even if it was not valid, the state is correct that she cannot contest the constitutionality of the seizure of the drugs.

To challenge the lawfulness of a search, a defendant must establish that she had an interest in the particular item that was seized. *State v. Knox*, 134 Or App 154, 161, 894 P2d 1185 (1995); *State v. MacDonald*, 105 Or App 102, 105, 803 P2d 1211 (1990), *rev den* 311 Or 433 (1991). In this case, the uncontradicted evidence was that Morton said that she had never seen the container that contained the drugs and related

paraphernalia, did not own it and knew nothing of its contents. In the light of that testimony, there is no basis on which to find that Morton had an interest in the container and, consequently, she cannot challenge its seizure. The trial court erred in suppressing that evidence.

The state next asserts that the trial court erred in granting defendant Evans's motion to suppress. The state offers two arguments in support of that assertion. It first argues that the warrant to arrest Morton was valid. Why the trial court's decision to suppress the evidence as to *Evans* turns on the validity of the warrant to arrest *Morton* is not readily apparent. From the record, it appears that Evans moved to suppress, arguing that, among other things, had the police not acted on the invalid warrant to arrest Morton, they would not have discovered the container of methamphetamine. The state did not argue that Evans could not attempt to suppress evidence obtained from the arrest of another person. *See State v. Trevino/Ahumada*, 133 Or App 24, 27, 889 P2d 1317, *rev den* 321 Or 340 (1995). Instead, it simply argued that the warrant was valid. The case then proceeded on the assumption that Evans could challenge the validity of the seizure of evidence from Morton, and the case was decided on that basis. Because we are not at liberty to consider arguments not asserted by either party at trial or on appeal, we proceed to the state's argument that the trial court erred in suppressing the evidence of the container and its contents as to Evans, because the warrant to arrest Morton was valid.

The state begins by arguing that the warrant to arrest Morton was authorized by ORS 153.200(1). The state acknowledges that it did not assert the applicability of that statute at trial, but it insists that, under the rule of *State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988), it may do so for the first time on appeal. The state also argues that, in any event, the trial court misconstrued ORS 153.560(1). Evans argues that the state cannot assert the application of ORS 153.200(1), because that issue was not asserted at trial. Even if the state could argue the application of ORS 153.200(1), Evans contends, the statute plainly does not authorize the issuance of warrants for failure to appear on a citation for a traffic infraction. Evans also contends that the trial court correctly construed ORS 153.560(1) in concluding that it

applies only to failure to appear on a citation for a traffic crime.

■     We begin with the state's argument that it may assert the applicability of ORS 153.200(1), even though it did not do so at trial. As a rule, we do not consider issues or theories not raised before the trial court. *State v. Isom*, 313 Or 391, 406, 837 P2d 491 (1992). As the Supreme Court explained in *State v. Hickmann*, 273 Or 358, 360, 540 P2d 1406 (1975):

> "Appellate courts are limited in their scope of review. Generally, on appeal the case, criminal or civil, should be heard on the same theory upon which it was presented in the court below." (Citation omitted.)

■     In this case, the theory that the state presented to the trial court was that ORS 153.560(1) authorized the issuance of the warrant to arrest Morton. The state never mentioned the applicability of ORS 153.200(1). We conclude that there is no basis for the state's assertion that its new argument was properly preserved.

The state's reliance on *Hitz* for a contrary conclusion is misplaced. In that case, the court distinguished between raising an issue at trial and identifying a source for a position or making a particular argument. The court said that "[t]he first ordinarily is essential, the second less so, the third least." *Id.* at 188. According to the state, all it has done in the appeal of this case is assert an alternate argument concerning the issue of whether the warrant to arrest Morton validly could have been issued. We do not agree. The issue before the trial court was whether ORS 153.560(1) authorized the issuance of the warrant. Whether a different statute might have justified the issuance of the warrant presents an entirely different issue. Just as an argument concerning the admissibility of evidence under one rule of evidence does not preserve an argument under other rules, so also in this case, the state's argument concerning the validity of the warrant to arrest Morton under one statute does not preserve the argument that the warrant was valid under an entirely different statute. *See State v. Solomon*, 133 Or App 184, 187-88, 890 P2d 433, *rev den* 321 Or 512 (1995); *State v. Carrillo*, 108 Or App 442, 445-46, 816 P2d 654, *rev den* 312 Or 527 (1991).

We turn then to the state's argument that the trial court misconstrued ORS 153.560(1). That subsection provides, in part:

> "If a person cited for a traffic crime fails to comply with the provisions of ORS 153.540, or if the person fails to appear at any time fixed by the court, a warrant for the person's arrest may be issued."

The state concedes that, at least "at first glance," the statute appears to say that, if a person cited for a traffic crime — and not a mere infraction — fails to appear or post bail, a warrant may issue. However, the state insists that, on closer scrutiny, it becomes clear that the statute cannot be read in that fashion. According to the state, the context of the section indicates that the reference to "the person" must refer to a person who has been cited for a traffic infraction as well as for a traffic crime.

In support of that argument, the state refers to the heading of the group of sections in which ORS 153.560(1) is located, which is labeled "traffic infractions." The state also relies on its observation that, in other sections of the chapter, the term "the person" is used without distinguishing between persons charged with traffic infractions and those charged with traffic crimes. Finally, the state argues that, because other statutes permit the issuance of warrants for failure to appear on citations for boating infractions, wildlife infractions and other types of infractions, it makes no sense not to permit the courts to issue warrants for failure to appear or remit bail on a citation for a traffic infraction.

■     Our task in interpreting a statute is to discern the intent of the legislature. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). We first examine the text and context of the statute, including other provisions of the same statute, other related statutes and previous versions of those statutes. *Krieger v. Just*, 319 Or 328, 336, 876 P2d 754 (1994). If the legislature's intent is clear from that inquiry, we need inquire no further. *PGE*, 317 Or at 611.

In this case, the text unambiguously authorizes a warrant only in cases involving a traffic crime. It states that, "[i]f a person cited for a traffic *crime*" fails to appear or remit bail or "if *the person* fails to appear at any time fixed by the

court," then the court may issue a warrant for *"the person's arrest."* ORS 153.560(1). (Emphasis supplied.) The plain, ordinary and grammatically appropriate reading of the section is that "the person" who fails to appear refers to the "person cited for a traffic crime." Indeed, it is the only reading of the sentence that makes sense.

Our common sense reading of that language is confirmed by reference to the former version of the same section. Before it was amended in 1981, the section read:

> "If a person cited fails to comply with the provisions of [ORS 153.540], or if *he* fails to appear at any time fixed by the court, a warrant for *his* arrest may be issued."

*Former* ORS 484.230 (*amended by* Or Laws 1981, ch 818, § 28 and renumbered ORS 153.560). (Emphasis supplied.) The section was amended as follows:

> "If a person cited **for a traffic crime** fails to comply with the provisions of [ORS 153.540], or if [*he*] **the person** fails to appear at any time fixed by the court, a warrant for [*his*] **the person's** arrest may be issued."

Or Laws 1981, ch 818, § 28. (Boldface and emphasis in original.) It is apparent that the amendments adopted the term "the person" as a gender neutral replacement for the terms "he" and "his," which obviously referred to "a person cited" for the traffic crime.

The state's arguments to the contrary do not overcome what is so plainly evidenced by the language of the statute. To begin with, the state's proffered construction requires us to read the statute in a manner that makes no sense. According to the state, the reference to "the person" who "fails to appear" must mean a person cited for a traffic infraction. Accordingly, the state concludes, a warrant may issue to arrest both those who have been cited for traffic crimes and those who have been cited for traffic infractions. In making that argument, the state ignores the fact that the statute authorizes the issuance of a warrant for the arrest of "the person." If, as the state suggests, the first reference to "the person" in the statute refers to persons who have been cited for a traffic infraction and the second reference to "the person," who is subject to the warrant, refers to both a person who has been cited for a traffic crime and a person who has

been cited for a traffic infraction, then the same term has two distinct meanings within the same sentence. We find it highly unlikely that the legislature intended such a strange construction.

The state's insistence that any difficulties with its proposed construction are required by the context of the statute is not persuasive. That the divisional heading for the group of sections in which ORS 153.560 appears is "traffic infractions" is of no moment. Divisional headings do not constitute part of the law. ORS 174.540; *Mitchell v. Board of Education,* 64 Or App 565, 568 n 2, 669 P2d 356, *rev den* 296 Or 120 (1983).

The state's observation that, elsewhere, the term "the person" is used to refer to persons cited for either infractions or crimes or both also is of no particular significance. All that demonstrates is that, in other contexts, the term "the person" is used to mean something different from what the language and context demonstrates is meant by the same term used in ORS 153.560(1).

We also reject the state's argument that it is not "logical" for the legislature to have provided for the issuance of a warrant to arrest persons who fail to appear or remit bail upon citation for boating infractions, wildlife and commercial fishing infractions and other types of infractions, but not traffic infractions. That is an argument to be directed at the legislature. Our function is to determine what the legislature has accomplished, by fairly construing the language of laws that it has enacted. It is not for us to read into those laws language that the legislature did not enact or to interpret language in those laws in an unreasonable fashion merely to accommodate what the state or any other party believes to be sound public policy or good logic. ORS 174.010; *Faverty v. McDonald's Restaurants of Oregon,* 133 Or App 514, 533, 892 P2d 703, *rev allowed* 321 Or 512 (1995).

■■ We conclude that the trial court correctly construed ORS 153.560(1) to authorize the issuance of a warrant to arrest persons who fail to appear or remit bail upon citation for a traffic crime, and not merely a traffic infraction. Because Morton had been cited for and convicted of a traffic infraction, ORS 153.560(1) did not provide a lawful basis for the issuance

of a warrant for her arrest. The trial court, therefore, correctly concluded that the warrant to arrest Morton was unlawful.

■  The state next argues that, even if the warrant to arrest Morton was not lawful, the trial court should have denied Evans's motion to suppress, because he never asserted an interest in the seized items. Evans argues that it is the state that cannot be heard on that argument, because it failed to raise it to the trial court and may not do so for the first time on appeal. The state concedes that it did not specifically argue that Evans failed to assert an interest in the items seized. Nevertheless, it insists that the issue was preserved. The state's entire argument on that point is as follows:

> "Although the prosecutor did not specifically argue that Evans 'lacked standing' to contest the seizure of the container, that assertion was implicit in her argument that Morton lacked 'standing.' "

There is no citation of authority for the proposition that raising an argument against a defendant in one case automatically preserves the same argument as to a defendant in another case, and we are aware of none. Moreover, our review of the transcript of the arguments to the trial court reveals that, although the motions were heard at the same time, there is no basis for concluding that the trial court was informed that the state intended its argument in opposition to Morton's motion to be directed at Evans's motion as well. We conclude, therefore, that the state did not preserve its argument as to Evans.[1]

The state does not challenge the trial court's ruling on Evans's motion to suppress on any other grounds. Accordingly, we conclude that the trial court did not err in granting that motion.

Reversed and remanded on charges against defendant Morton; otherwise affirmed.

---

[1] We note that, unlike *State v. Knox*, 134 Or App 154, 894 P2d 1185 (1995), this is not a case in which the state has argued, for the first time on appeal, a defendant's failure to assert an interest in property seized as a basis for *affirming* the trial court's ruling on a motion to suppress. Moreover, unlike *Knox*, this is not a case in which the factual record on that issue already has been fully developed below.

**De MUNIZ, J.,** concurring.

I agree with the lead opinion's disposition as to defendant Evans.

I feel compelled to follow *State v. MacDonald*, 105 Or App 102, 803 P2d 1211 (1990), *rev den* 311 Or 433 (1991), and other recent decisions by this court that hold that a defendant who denies having a possessory or ownership interest in the contraband that he or she is charged with possessing is foreclosed from seeking its exclusion under Article I, section 9. For that reason, I also concur in the lead opinion's disposition as to defendant Morton. However, if we were writing on a clean slate, I would reach the opposite conclusion concerning Morton. I also note that the Supreme Court has not yet written on this slate.

In *State v. Simons*, 86 Or App 34, 738 P2d 790, *rev den* 304 Or 437 (1987), we held that, when possession is a material element of the charged offense, it is denied by a not guilty plea, and the defendant is not required to claim an interest in the contraband in order to seek its exclusion under Article I, section 9, as having been obtained through an unlawful search or seizure. In *MacDonald*, we reached the opposite conclusion. Although we acknowledged that "it is incongruous to require a defendant to take a position at a pretrial hearing contrary to his position at trial," *id.* at 105, we felt compelled by the Supreme Court's intervening decision in *State v. Kosta*, 304 Or 549, 748 P2d 72 (1987), to so conclude. We explained:

> "In *Kosta*, the police had intercepted a package on a Federal Express delivery truck. The defendant had not caused the package to be transported, nor was he the addressee, intended recipient or an individual with an identifiable interest in the package at the time of its seizure. The package was subjected to a sniff by a trained police dog. Police officers opened it and identified the contents as cocaine, after which it was resealed and delivered to the addressee. The defendant picked up the package, after which he was charged with and convicted of possession of a controlled substance. The court held that the defendant's Article I, section 9, rights were not violated by the police conduct of stopping the delivery truck and exposing the package to the police dog, because he had failed to articulate any protected interest in

the package at the time of the intrusion. 304 Or at 554." *Id.* at 104-05.

We went on to say in *MacDonald* that our reasoning in *Simons*

> "ignores the purpose of the exclusionary rule of section 9, which is to recognize the personal right of every individual to be free from unreasonable searches and seizures. *See e.g., State v. Tanner*, 304 Or 312, 315, 745 P2d 757 (1987); *State v. Davis*, 295 Or 227, 231, 666 P2d 802 (1983). When a defendant challenges the lawfulness of a search or seizure, the issue is not whether he has 'standing' to make a legal challenge, rather, it is whether there has been a significant interference with his possessory or ownership interests in the property. *See State v. Tanner, supra*, 304 Or at 315. Although it is incongruous to require a defendant to take a position at a pretrial hearing contrary to his position at trial, the result is compelled by section 9, which applies regardless of the nature of the offense. Therefore, we hold that, notwithstanding the possessory aspect of the offense, '[i]t is the defendant's burden to establish a protected right in the particular item of property before he can challenge the alleged violation.' *State v. Nelson*, 76 Or App 67, 71, 708 P2d 1153 (1985). Defendant failed to meet that burden when he declined to claim any protected interest in the bindle." *Id.* at 105-06 (footnote omitted).

There is a difference, however, between the *Kosta* situation and the situation in *MacDonald* and this case. In *Kosta*, the basis for the holding was that the defendant did not *have* the requisite interest in the drugs at the time of the search. Here and in *MacDonald*, the basis for the holdings is that the defendants did not *acknowledge* that, at the time of the searches or seizures, they had that interest. That distinction is critical. In the context of a possession crime, it is entirely consistent in the *Kosta* situation for the defendant to have lacked the necessary interest at the time of the search, but to have unlawfully possessed the drugs later. Conversely, in *MacDonald* and this case, or at least under the "confess it or waive it" rule that they state, the possessory interest question and the question of guilt coincide. For the state to ultimately prove guilt, it must establish that defendant had the very interest in the drugs that she earlier denied having, although that denial precluded her from contesting the permissibility of their use as evidence. In a very real sense, the

*MacDonald* rule means that the defendant must choose between self-incrimination and having no redress against an unlawful search or seizure.

I am not prepared to say that the understanding of *Kosta* that *MacDonald* states is implausible. There is language in *Kosta* that *can* be read as placing an affirmative burden on defendants of the kind that *MacDonald* establishes. *See* 304 Or at 554. However, although *MacDonald's* interpretation of *Kosta* is not implausible, it is also far from the only plausible understanding that the language or logic of *Kosta* allows. Stated another way, *this* court should adhere to its precedent, but the Supreme Court has not yet taken the occasion to consider whether the holdings in *MacDonald* and here bear out the intended meaning of *its* precedent.[1]

Warren, Riggs and Armstrong, JJ., join in this concurrence.

**RICHARDSON, C. J.,** concurring in part; dissenting in part.

I agree with the analysis in the concurring opinion of De Muniz, J., about the reluctant necessity to follow *State v. MacDonald*, 105 Or App 102, 803 P2d 1211 (1990), *rev den* 311 Or 433 (1991). Consequently, I also agree with the majority's conclusion that the trial court erred in suppressing the container and its contents as to defendant Morton. I dissent, however, from the majority's conclusion that the same evidence was properly suppressed as to defendant Evans.

The essence of the majority's analysis of Evans' motion is that the state did not argue below or on appeal that Evans is foreclosed from challenging the evidence on the basis that Morton had no privacy interest in the container. The majority says that the only argument advanced by the state regarding Evans is that the warrant to arrest Morton was valid. It is important, for resolution of Evans' motion, to

---

[1] *State v. Nelson*, 76 Or App 67, 71, 708 P2d 1153 (1985), which is quoted in *MacDonald*, is of little independent authoritative weight. It predates *Simons, Kosta* and *Tanner*. If it suggests anywhere in its text which constitution it is talking about, I do not find the reference, and the only authority it cites for the proposition in question is a case that turns solely on Fourth Amendment analysis.

understand the factual basis of the search, the charges made and the procedural posture of the hearing and appeal.

On the basis of information received from a federal marshall, Detective Carpenter of the Springfield Police Department began surveillance of two particular rooms at a motel. The motel clerk identified defendant Morton as the person who rented one of the rooms. Carpenter determined that Morton's boyfriend, defendant Evans, was also in the room. Carpenter learned that there was an outstanding arrest warrant for Morton and information from which he concluded that Evans may be armed and dangerous.

Carpenter and several other officers continued their surveillance of the two motel rooms and of four to six persons who appeared to be associated with the rooms. Based on all the information that the officers had, they suspected that illegal drug activity was being conducted in the motel rooms.

When four of the persons[1] left the motel with luggage, the officers approached them as they were getting into two vehicles. When defendant Morton saw the officers, she turned and walked away from the vehicle that Evans was standing near. One officer went to Morton, told her she was under arrest on a warrant and then attempted to place her in handcuffs. She struggled and he took her over to one of the vehicles to get her handcuffed. As he got near the vehicle, he saw a white pill container, about 10 inches by 3 inches, fall from under her jacket. He asked Morton what that was. She responded that it was not hers and "you guys must have planted that." The officer picked up the container, later opened it and found methamphetamine and some syringes.

At about the same time that the officer approached Morton to arrest her, another officer went to defendant Evans, and handcuffed him for "protection of the officers" while Morton was being arrested. The officer "frisked" Evans and seized a box of .45 caliber ammunition. That officer then "did a quick search of the vehicle" and found a .45 caliber handgun.

---

[1] The officers concluded that two of the six persons were not involved with the motel rooms or with the other four persons under surveillance.

In a joint indictment, Evans was individually charged with unlawful possession of a firearm in a vehicle and being a convicted felon in possession of a firearm. He was jointly charged with Morton with unlawful delivery of a controlled substance, methamphetamine. In addition, the indictment charged Morton with possession of a controlled substance.

The state's apparent theory of the charge for delivery of a controlled substance was that there was drug activity going on in the motel room occupied by defendants and that the methamphetamine and drug paraphernalia in the container was evidence of the drug activity.

The cases were processed separately and defendants filed separate motions for suppression of evidence. Evans moved to suppress all items seized from his possession. One of the grounds expressed in the accompanying memoranda was that the warrant for Morton's arrest was unlawful so any search or seizure following her arrest was unlawful.

Morton moved to suppress her "seizure" as unlawful as well as the subsequent seizure and search of the closed container. She argued that the warrant was unlawfully issued under ORS 153.560(1) and consequently her arrest and all that followed was unlawful.

In a responding memorandum to Morton's motion, the state argued that, because Morton disclaimed any ownership or knowledge of the container, she did not have "standing"[2] to challenge its seizure under *MacDonald*. The state also contended that the arrest warrant was lawfully issued.

The cases were joined for purposes of a hearing on both defendants' motions. Near the start of the hearing, counsel for defendant Morton said:

"Can I, for the purposes of this hearing, say that, you know, my motion and his [counsel for defendant Evans] motion, we ask to join in his motion and I also ask to join in any objections he makes. And I think he may want to be first."

---

[2] The state later explained that what it meant by standing was that there was no violation of a privacy interest and no search or seizure in a constitutional sense.

In essence, the motions were heard together as joint motions. The court, in part, ruled separately, because the frisk of Evans and the search of the car related only to the charges against Evans individually. In relation to Morton, the court ruled that the arrest warrant was unlawfully issued; it did not expressly address the state's argument about "standing." However, because it concluded that there was an unlawful search, it implicitly rejected the state's argument.

There were two separate orders issued. One names only defendant Morton and made findings and conclusions about the arrest warrant. That order concluded that Morton's motion to suppress was granted on the basis of an unlawful arrest. The second order named both defendants but the findings and conclusions related only to the validity of the frisk of Evans and the evidence obtained following what the court characterized as an unlawful arrest of Evans. The order then stated:

> "All evidence obtained subsequent to the unlawful arrest of Mr. Evans is therefore suppressed."

It is clear to me that, although the rulings were precise as to the evidence that related to each defendant, the motions, arguments and rulings were treated as relating to both cases. The state, at trial, made its arguments in relation to both defendants. Both defendants contended that the seizure of the container was unlawful and should be suppressed as to both of them. The state's argument about Morton having no privacy interest in the container, because she disclaimed ownership, implicitly related to Evans' motion to suppress, because he joined Morton's motion and arguments and had presented no other basis for suppression than did Morton. There was no separate ground for the state to address.

The court's written orders are explainable only by treating any ruling about the container and its contents as common to both defendants. They were jointly charged with delivery of methamphetamine and the contents of the container was the state's primary evidence. The order as to Evans, however, related only to evidence seized after his "illegal arrest." That order did not deal with the container and its contents. If we look only at the order and parse the rulings out to each defendant individually, as the majority does, the container and contents were *not* suppressed as to

Evans. He does not cross-appeal or otherwise raise that issue. If the majority is concerned that the state made no argument about that evidence in relation to Evans, its concern is misplaced because the evidence was not suppressed as to Evans; at least if we read the order in Evans' case literally.

That reading of the text of the order in the context of the entire proceedings, however, makes no sense and is unreasonable. The trial court ruled that the container was unlawfully seized from defendant Morton because her arrest was unlawful. That ruling inured to Evans' benefit because the state cannot, as Evans argued, use unlawfully seized evidence. Evans made no argument for suppression different than that made by Morton. The ruling, thus, was that the evidence was illegally obtained because Morton's privacy right was violated. There was no ruling that a separate privacy right of Evans was violated by the seizure and no need for the state to address such an argument.

On the other side of the coin, if the trial court had concluded, consistent with the state's argument, that Morton claimed no interest in the container and then had denied suppression because no privacy right had been violated, the joint motions regarding the container would be denied as to both defendants. Evans could not have then raised a privacy interest separate from Morton's and there would have been no need to separately address the seizure issue as to Evans. The majority is wrong if it concludes that the state had to make a separate, particular argument as to Evans' motion.

To illustrate the majority's problem, suppose that Morton had consented to the search of her person and the seizure of the container and that there was, therefore, no search incident to an arrest. The evidence would have been lawfully obtained by the police. No one would argue that Evans could seek suppression of the container on the grounds that he did not consent to the search or seizure. *See State v. Tanner*, 304 Or 312, 745 P2d 757 (1987).

From this overly elaborate explanation of the trial court's procedure and rationale, we proceed to the appeal. The state appealed separately from the order in each case because the cases had not been consolidated at the lower level; there had only been a joint hearing. We allowed the state's

motion to consolidate the cases because they raised the same legal issues on the same set of facts. The state filed one brief for the consolidated cases and defendants filed a joint respondents' brief.

The state contests only the suppression of the container and makes no argument about the frisk of Evans or the search of the car; consequently, the only issue on appeal is the seizure of the container. Because the trial court addressed only the seizure as it related to Morton and phrased its conclusions in terms of an illegal arrest of Morton, it is logical for the state to address those conclusions directly and in that mode. The trial court made no separate findings about the container as it relates to Evans, because it followed as a matter of course, at least for the trial court, that if the evidence was seized unlawfully from Morton, it is also suppressed for use in Evans' trial.

However, the state did argue in its brief about Evans' right to suppression. It said:

"The search of defendant Morton did not infringe any constitutionally protected interest of defendant [Evans]. He put on no evidence that he had entrusted the methamphetamine to Morton or that he held any other protected interest that was infringed by her stop or the seizure of the container."

Considering the connection that Evans has to the evidence, that is all the state needs to argue. Evans did not offer at trial, and does not offer now, any basis for the motion to suppress the container other than the argument that Morton was unlawfully arrested and searched.

The majority approaches the issue as one of preservation. It is correct, as the state acknowledges, that it did not argue below that Evans had no separate privacy interest in the container. However, the issue of preservation is not game-playing; it is a question of whether the trial court was presented with the issue to resolve. As I have demonstrated, the trial court was presented with the issue — was the evidence lawfully seized from Morton. It followed, in the trial court, that if the evidence was unlawfully seized, the joint motion to suppress it would be allowed as to both defendants. Conversely, if the evidence was lawfully seized, the joint motion to

supress it would be denied. That scenario has not changed on appeal.

I am mystified by the majority's legal analysis that Morton cannot use her illegal arrest as a basis of suppression, but Evans can. The state lawfully seized the evidence because there is no privacy interest violated. So, what constitutional violation *vis-a-vis* Evans exists in this case? The majority simply allows Evans to claim that an unlawful arrest of Morton allows him to argue that the seizure of evidence violates *his* constitutional rights. Morton's rights were not violated; there was no search and no unlawful seizure. There is nothing else to address.

I dissent. Haselton, J., joins in this dissent.