Submitted on remand from the Oregon Supreme Court June 26, resubmitted En
Banc November 19, 1998, reversed and remanded in part; otherwise affirmed
May 26, 1999

# STATE OF OREGON,
*Respondent,*

*v.*

# JAMES KENJI KNOX,
*Appellant.*

(CM93-0464; CA A79581)

984 P2d 294

Kathryn A. Wood for appellant.

Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Jonathan H. Fussner, Assistant Attorney General, for respondent.

Before Deits, Chief Judge, and Edmonds, De Muniz, Landau, Haselton, Armstrong, Wollheim, and Brewer, Judges, and Warren, Senior Judge.

DE MUNIZ, J.

Haselton, J., dissenting.

Armstrong, J., dissenting.

## DE MUNIZ, J.

The Supreme Court remanded this appeal to us "in light of *State v. Morton*, 326 Or 466, 953 P2d 374 (1998)." *State v. Knox*, 327 Or 97, 957 P2d 1209 (1998). In our earlier opinion, we had held that the trial court erred in denying defendant's motion to suppress evidence of his unlawful possession of fireworks. However, we concluded that the court's denial of defendant's motion to suppress evidence of his possession of controlled substances was not error, because defendant had disclaimed any interest in the drugs. *State v. Knox*, 134 Or App 154, 894 P2d 1185 (1995). We adhere to the first holding and, applying the principles of *Morton*, again affirm the trial court on the other issues.

The relevant facts are set out more completely in our original opinion, 134 Or App at 156-57, and require only brief recapitulation here. Corvallis Police Officer Sharpton stopped defendant for improperly signaling. Defendant got out of his truck and met Sharpton toward the rear of the vehicle. Sharpton recognized defendant and knew that he had been questioned on suspicion of delivery of controlled substances and on suspicion of homicide, although in both cases no charges had been brought. Sharpton also knew that defendant had a reputation for carrying weapons. Based on that knowledge, Sharpton asked defendant whether he had any weapons. Defendant replied that he had a handgun in his tool box. After patting defendant down and finding no weapons, Sharpton searched the interior of the truck. He found a box on the front seat, and in the box found two hand guns and a smaller box. In the smaller box, Sharpton found an illegal firecracker.

Sharpton arrested defendant for unlawful possession of fireworks. He placed defendant in the back seat of the police car and took defendant to the police station. When they arrived, defendant was taken to the jail. Another officer checked the interior of Sharpton's car and, underneath the seat where defendant had been sitting, found a zippered pouch that contained cocaine. When asked, defendant said that he knew nothing about the zippered pouch or the cocaine.

Defendant moved to suppress the evidence of the firecracker and the cocaine on the ground that Sharpton had no basis for expanding the scope of the traffic stop investigation beyond the infraction itself. The trial court denied the motion. On appeal, defendant argued that the trial court erred in denying the motion. The state argued that Sharpton was justified in expanding the scope of the traffic stop for officer safety reasons, given defendant's reputation. We held that the fact that "defendant had a reputation for carrying weapons, by itself, is insufficient to create a reasonable suspicion that defendant might use them during the otherwise routine traffic stop." *Knox*, 134 Or App at 159-60. We concluded that the facts fell short of creating a reasonable belief that defendant posed an immediate threat to Sharpton and, on that ground, held that the trial court erred in failing to suppress the evidence of the unlawful firecracker that was found in the truck and that formed the basis for defendant's arrest. *Id.* at 160. We adhere to that holding.

As to the cocaine, we held that defendant could not assert that the evidence should have been suppressed, because he disclaimed any interest in the evidence. Relying on earlier decisions by this court, we explained:

> "As a matter of law, a defendant must assert a 'protected right in the particular item of property' before he or she may assert it was unconstitutionally seized. *State v. Trevino/Ahumada*, 133 Or App 24, 27-28, 889 P2d 1317 (1995); *State v. MacDonald*, 105 Or App 102, 105-06, 803 P2d 1211 (1990), *rev den* 311 Or 433 (1991). In this case, defendant unequivocally disclaimed any interest in the pouch of cocaine seized from the back seat of the patrol car. The trial court, therefore, did not err in refusing to suppress that evidence." *Id.* at 161.

While this case was pending on review, the Supreme Court decided *Morton*. The defendant in that case was arrested pursuant to an outstanding warrant. In the process of the arrest, a plastic container fell from the defendant's jacket. The arresting officer opened the container, and it contained methamphetamine and related paraphernalia. The defendant, however, adamantly denied ever having seen the container. Relying on our earlier decision in this case and in

*State v. MacDonald*, 105 Or App 102, 803 P2d 1211 (1990), *rev den* 311 Or 433 (1991), we held:

"To challenge the lawfulness of a search, a defendant must establish that she had an interest in the particular item that was seized. * * * In this case, the uncontradicted evidence was that Morton said that she had never seen the container that contained the drugs and related paraphernalia, did not own it and knew nothing of its contents. In the light of that testimony, there is no basis on which to find that Morton had an interest in the container and, consequently, she cannot challenge its seizure." *State v. Morton / Evans*, 137 Or App 228, 231-32, 904 P2d 631 (1995).

The Supreme Court reversed, explaining:

"It was logical for the Court of Appeals to address first the issue whether any constitutionally protected interest of defendant had been invaded by the seizure of the container because, if none were invaded, defendant was not entitled to have the evidence suppressed. *See State v. Kosta*, 304 Or 549, 553-54, 748 P2d 72 (1987) (where defendant was not a sender, an addressee, or an intended recipient of a package, he had no protectable interest under Article I, section 9, of the Oregon Constitution, in the package sufficient to permit him to succeed in a motion to suppress evidence of the contents of the package, based on police activity that occurred before the defendant ever came into contact with the package). However, the uncontradicted evidence in this case showed that this defendant had, in fact, been in personal possession of the container in question only moments before it came into the possession of the police. *Although defendant denied vehemently any ownership interest in or knowledge of the contents of the container, there was no debating the fact that she possessed it. It follows that she was entitled to challenge, under Article I, section 9, the police seizure of the container.*" *Morton*, 326 Or at 469-70 (emphasis added).

The emphasized language in the foregoing quotation from the Supreme Court's opinion is squarely contrary to the two critical and interrelated propositions that we expressed in our opinion in that case and in our earlier opinion in this

case: That a defendant who disclaims a possessory or protected interest in contraband cannot challenge the lawfulness of its seizure, and that a defendant who moves to suppress the evidence bears the burden of establishing that he or she has such an interest in it.

■ The Supreme Court's rejection of the first proposition is explicit. The court noted that the defendant "denied vehemently" that the container was hers but held that she was nevertheless "entitled to challenge" its seizure as violating Article I, section 9. The court's rejection of the second proposition was not explicit, but was nevertheless unmistakable. Although the court's conclusion that the defendant was entitled to challenge the seizure was preceded by its observation that "there was no debating the fact that she had possessed" the contraband, the *only showing* that the *defendant* in *Morton* made about a possessory interest was her denial that she had one. The fact of her possession was not "undebatable" by reason of any *burden* that the defendant *could* have carried. The necessary import of the Supreme Court's statement is that the burden of establishing the presence or absence of the requisite fact was not the defendant's but, as with other factual questions germane to the validity of a warrantless search or seizure under the Oregon Constitution, it rested on the state. Indeed, the court in *Morton* concluded its discussion of the issue by quoting its statement in *State v. Tanner*, 304 Or 312, 315-16, 745 P2d 757 (1987), that the " 'question whether a defendant's personal rights were violated by an unlawful search or seizure is often mislabeled a question of "standing," but the question goes to the merits of a motion to suppress.' " *Morton*, 326 Or at 470. In other words, like other factual questions pertinent to the "merits," the state has the burden of proving the negative proposition that no interest of the defendant's was involved. We do not understand the state to argue that it proved in the proceedings on the motion to suppress that defendant did not possess the cocaine. It follows that he had the necessary interest to move for its suppression.

The state also argues that, if the cocaine had been in defendant's possession, he lost his interest by abandoning the drugs under the seat of the police car after his arrest. We did

not reach that issue in our first consideration of the appeal, because our disposition of the possessory interest issue was independently conclusive. Given the conclusion that we now reach as to that issue, however, the abandonment issue must be considered as an alternative basis that the state advances for affirming the trial court's ruling. For the reasons that follow, we agree with the state's contention that defendant abandoned the controlled substances.

According to the officer's testimony at the hearing on the motion to suppress, defendant was arrested in the parking lot of a grocery store for fireworks and firearms offenses and placed in the back seat of a patrol car with his hands handcuffed behind him. Before he was transported to the police station, the officers noticed that defendant "was bouncing around a lot." When they arrived at the police station, the officer observed that one of defendant's front pants pockets was partially pulled out so that the lining was exposed. Defendant had previously told the officer at the scene of the arrest that the pocket contained money that he was going to use to buy chicken for his mother at the grocery store, and the officer had only patted the pocket down to ascertain that it did not contain any hard objects. As part of the booking procedure at the police station, defendant was searched, and nothing was found in his right front pocket. When defendant was asked where his money was, he said that he didn't have any. After the search was completed and the handcuffs were taken off, defendant was placed in a holding cell.

Immediately thereafter, the officer returned to the patrol car and looked under the rear seat, where he found nothing. However, "pushed back up underneath the seat," in the area where defendant had been seated, he found a black zipper pouch. The pouch was later searched and found to contain cocaine, the subject of defendant's motion to suppress. Defendant also testified about the cocaine at the hearing on the motion to suppress:

"Q. Okay, do you have any idea what they're talking about regarding a white bindle, do you have any idea?

"A. No.

"Q. Or a bindle of white powder?

"A.   No, I don't * * *."

In *Morton,* the court said,

"Even if the defendant would have the right, under the
rationale of *Kosta* and *Tanner,* to move to suppress the evi-
dence of the container and its contents, that right would be
lost if, for example, the facts showed that the defendant had
abandoned the container before the police seized it. *See
State v. McDonald,* 105 Or App 102, 803 P2d 1211 (1990) (so
holding). The prosecutor argued to the trial judge that
defendant had, in fact, abandoned the container, but—as
our recitation of the pertinent facts makes clear—defen-
dant dropped the container only after the police had begun
the process of taking defendant into custody pursuant to
the arrest warrant. Thus, in this instance, the state cannot
separate the *act of arrest* from the dropping of the con-
tainer; the seizure can be proper only if the arrest itself was
authorized by a valid warrant." 326 Or at 470 (emphasis
added).

In *McDonald,* two officers were on patrol when they
saw defendant driving his vehicle at an excessive speed. As
they pursued the car, one of them saw a small white object
drop from the driver's window. When the object was recov-
ered, it was discovered to be a paper bindle containing
cocaine. After the defendant was stopped, he denied any pos-
sessory interest in the bindle. However, before trial, he
moved to suppress the bindle as evidence. Relying on *Kosta,*
we held that it was defendant's burden to establish a pro-
tected right in the bindle before he could challenge its admis-
sion into evidence under Article I, section 9, of the Oregon
Constitution. Accordingly, the above-quoted language from
*Morton* can only mean that, although our holding regarding
what the defendant was required to do as a predicate to his
motion to suppress was erroneous, the facts in *McDonald*
reflect an example of when a defendant will have been
deemed to have "abandoned" any interest in the contraband.
Under *Morton,* an abandonment of a privacy or possessory
interest in the object of a motion to suppress will result in the
motion being denied on its merits.

"Abandonment" is a voluntary relinquishment of
possessory and privacy interests in an article of property that
necessarily involves both legal and factual questions. For

purposes of "abandonment" in the constitutional sense under the Fourth Amendment, the question is whether a defendant, in discarding the property, has relinquished a reasonable expectation of privacy so that the seizure is reasonable. Wayne R. LaFave, 1 *Search and Seizure* § 2.6(b), 574 (3d ed 1996). In essence, what is abandoned is not necessarily the defendant's property interest under the law of property but the reasonable expectation of privacy in the property. *Id.* However, if the possessor has been coerced by illegal police conduct, courts will not consider the property to be abandoned in the constitutional sense. *Id.* at 584.[1]

■　　Under section 9, a similar question arises: Has defendant relinquished his privacy or possessory interest in the pouch under circumstances that makes its seizure reasonable? In this case, the seizure of the pouch occurred in the police car, apparently after defendant had voluntarily left it there and had been lodged in jail. Defendant had no privacy interest in the car; it belonged to the police. Thus, this case does not present the issue of whether the search for, and the seizure of, the pouch directly violated section 9 but, rather, whether defendant's relinquishment of possession of the pouch was obtained by the exploitation of the illegal search of *his* vehicle while it was in the grocery store parking lot. The Supreme Court's decision in *State v. Rodriguez*, 317 Or 27, 854 P2d 399 (1993), illustrates why the issue must be framed in that manner.

In *Rodriguez*, local police officers accompanied an immigration official when he went to arrest the defendant at his apartment pursuant to an arrest warrant that was assumed to be illegal for purposes of the court's analysis. During the execution of the warrant, the immigration official obtained consent from the defendant to search the apartment. During the ensuing search, one of the officers discovered firearms in the apartment, which led to the defendant being charged with being an ex-convict in possession of firearms. After the defendant was convicted, he appealed, arguing that, because his arrest was illegal, the search was

---

[1] The issue is analogous to a purported consent to search where the consent is obtained by illegal coercion by the police. A coerced consent is a legal nullity, and the protections of the constitutions apply even though the consent is given.

tainted by the illegality. We adopted defendant's argument and reversed his conviction. On review, the Supreme Court reversed our decision. It reasoned:

"We begin our inquiry by making clear that this case does *not* present the issue whether defendant's consent to the search of his apartment was *voluntary*. Rather this case presents the issue whether defendant's consent was obtained by exploitation of the purportedly unlawful arrest.

"The distinction we make here between voluntariness and exploitation is an important one. Unlawful police conduct occurring before a search made pursuant to a person's consent may affect the admissibility of evidence seized during that search in two ways. In some cases, the unlawful conduct may bear on the issue of voluntariness. That is, the unlawful conduct may have some effect on the state of mind of the person giving the consent, affecting whether the consent is a voluntary act of that person's free will. * * *

"* * * [W]here the court has determined that the consent was voluntary, unlawful police conduct occurring before a consent search may still affect admissibility of the evidence seized during the search. * * *

"Whether suppression is required in any such case will, however, depend on the nature of the connection between the unlawful police conduct and the evidence sought to be suppressed. As we have noted previously, evidence is subject to suppression in a criminal prosecution if it was '*obtained in violation* of a defendant's rights under [Article I, section 9].' Under that standard, there will have to be, at the very least, a causal connection between the unlawful police conduct and the evidence uncovered during the subsequent consent search. Thus, where the evidence would have been obtained even in the absence of the unlawful police conduct—*i.e.*, where there is no causal connection between the unlawful conduct and the discovery of the evidence—the mere fact that the evidence was obtained *after* that conduct will not require suppression.

"A causal connection alone, however, still is not sufficient to require suppression. This court has rejected the so-called 'but for' test, which would require the suppression of any evidence that would not have been discovered 'but for' the unlawful police conduct. Thus, the fact that, 'but for' the

unlawful conduct, the police would not have been in a position to (for example) seek a person's consent does not, in and of itself, render any evidence uncovered during the ensuing consent search inadmissible.

"In what circumstances, then, does unlawful police conduct render evidence obtained in a later consent search inadmissible, where the consent to the search is voluntary? We think that the evidence obtained during a search should be suppressed only in those cases where the police have exploited their prior unlawful conduct to obtain that consent. Only where such exploitation occurs can it be said that the evidence discovered subsequently was 'obtained in violation' of a defendant's rights under Article I, section 9." 317 Or at 38-40 (footnotes omitted; citations omitted; emphasis in original).

The "exploitation" analysis used in *Rodriguez* is applicable to the facts in *Morton* and to this case. Although the *Morton* court did not expressly apply an "exploitation" analysis, it is apparent that that is what the court employed. In holding that the container was subject to suppression, the court concluded that the dropping of the container could not be separated from the process of the execution of the arrest based on an invalid warrant. The causal connection between the arrest and the dropping of the container was not interrupted by any intervening events, and the unlawful police conduct directly coerced Morton's actions. To permit the admissibility of the evidence in *Morton* would be to permit the police to exploit or take advantage of the unlawful arrest.

Here, in contrast to *Morton*, the illegal search in the parking lot merely began the chain of events that led to the subsequent discovery of the pouch in the patrol car at the police station. Factually, the seizure of the pouch was *separate* from any police illegality. As the court noted in *Rodriguez*, the mere physical presence of the officer at the police parking lot because of the events that began with the search of defendant's car does not, by itself, constitute an exploitation of the illegal search. 317 Or at 40. The search and the arrest for what was discovered in defendant's car were complete when defendant was handcuffed and placed in the patrol car. His transportation to the police station during

which his alleged deposit occurred was an event that intervened between the illegal search and seizure and the seizure at issue here.

As in *Rodriguez*, a "but for" analysis is inappropriate. Most importantly, the police did not exploit their illegal conduct in the store parking lot to compel defendant to abandon the pouch in the patrol car. He could have retained its possession in the car just as he had retained it while the search of his car was occurring and while he was being arrested. Although defendant may have relinquished possession of the pouch to avoid its discovery on his person, because he knew he would be searched at the police station during the booking process, that is not a ground on which to hold that his privacy or possessory interest in the pouch was violated.[2] As the court said in *Rodriguez*, "[o]nly where [exploitation of police unlawful conduct] occurs, can it be said that the evidence discovered subsequently was 'obtained in violation' of a defendant's rights under Article I, section 9." 317 Or at 40. The pouch was like any other article that defendant could have left in the patrol car after his arrest. The fact that it happened to be contraband does not change the nature of any purported privacy interest under section 9. Because his alleged deposit of the pouch in the patrol car was a product of

---

[2] Remarkably, Judge Armstrong's dissent argues that, when defendant hid the pouch underneath the seat of the patrol car, "defendant did not intend to relinquish his property interest in the pouch[.]" 160 Or App at 680. That assertion is wrong both factually and legally. As a factual matter, defendant testified at the suppression hearing that he knew nothing about the cocaine discovered under the seat of the car. *Compare State v. Creighton*, 142 Or App 378, 921 P2d 1339 (1996) (defendant disclaimed an interest at the scene but testified at the suppression hearing that the pack the police searched belonged to him). Although the state's evidence at the suppression hearing regarding defendant's alleged possession of the cocaine was sufficient to demonstrate defendant's interest in the cocaine in order to seek its suppression, the question of defendant's intent *vis-a-vis* his property interest in and possession of the item, unlike in *Morton*, is logically separable from the arrest and therefore is a separate legal question. In *Morton*, the only evidence was that defendant dropped the container as she was seized. Here, there is no evidence permitting any inference that, when defendant hid the pouch containing the cocaine under the seat of the car and later denied any knowledge of the pouch, he "did not intend to relinquish his property interest in the pouch[.]" On the contrary, the evidence permits only the opposite inference.

All that need be said about the exploitation analysis in each dissent is that each rests on the "but for" principle—*i.e.*, "but for" the alleged arrest, defendant would not have needed to hide the pouch containing the cocaine. It need not be repeated that the "but for" analysis was thoroughly rejected in *Rodriguez*.

his own volition, and its seizure was not an exploitation of the search by the police in the parking lot, he should be held to have abandoned his privacy interest in the pouch. The constitutional prohibition against unreasonable searches and seizures simply does not apply.

Conviction for unlawful possession of fireworks reversed and remanded; otherwise affirmed.

**HASELTON, J.,** dissenting.

I cannot join in the "nonabandonment" aspect of Judge Armstrong's dissent. *See* 160 Or App at 681-83 (Armstrong, J., dissenting). However, I agree that *Morton* is not materially distinguishable. Here, as in *Morton*, the unlawful arrest was the *motivating cause* of defendant's abandonment of the drugs. That is, as in *Morton*, defendant abandoned drugs to forestall their inevitable discovery directly incident to the unlawful arrest. If defendant had kept the drugs, and they had been discovered during booking, there is no question that they would have been suppressed. I do not understand why or how under *Morton* the result here can, or should, be any different.

Brewer, J., joins in this dissent.

**ARMSTRONG, J.,** dissenting.

I agree with the majority's explanation of why defendant may challenge the search of the black zipper pouch that the police found in a police car in which defendant had sat on the way to the station after his arrest. However, I disagree with the majority's assertion that, by allegedly placing the pouch under the seat in the car, defendant had abandoned his Article I, section 9, interests in it. In reaching that conclusion, the majority ignores both controlling authority on what constitutes abandonment of rights in property and the Supreme Court's emphasis in *State v. Morton*, 326 Or 466, 953 P2d 374 (1998), on whether the purported abandonment was the result of illegal police conduct. Because defendant did not intend to relinquish his property interest in the pouch, and because his attempt to hide it was the result of an unlawful arrest, the search of the pouch is not justified on the ground that he had abandoned it. The state does not suggest any other authority for the police to open the pouch, and I

therefore dissent from the decision upholding the search and affirming defendant's conviction.

The majority recognizes that Article I, section 9, protects both property and privacy interests, although it refers to property interests by the more limited term of "possessory" interest. However, relying for some inexplicable reason on a treatise that attempts to make sense of the various convolutions of Fourth Amendment law, it then suggests that the only question before us is whether defendant had abandoned whatever privacy interest he had in the pouch. Yet abandonment is a concept that derives from property law and that, by its very nature, involves the giving up of a property interest in specific property. That is how the seminal case on abandonment under Article I, section 9, treats it; under that case, defendant did not abandon the pouch by attempting to hide it from the police.

In *State v. Pidcock*, 89 Or App 443, 749 P2d 597, *aff'd on other grounds* 306 Or 335, 759 P2d 1092 (1988), *cert den* 489 US 1011 (1989), the defendant lost a briefcase that contained a large sum of money and a number of incriminating items. The person who found the briefcase turned it over to the sheriff's office. Before learning that the sheriff had the briefcase, the defendant had made a number of attempts to find it, including ordering a classified advertisement in a local newspaper. After learning that the briefcase was in the sheriff's hands, the defendant canceled the advertisement. He did not respond to an advertisement seeking the owner of the briefcase that the finder subsequently placed in the same newspaper. Before the defendant canceled the advertisement, the sheriff had opened the briefcase and examined its contents. The defendant was eventually arrested and sought to suppress evidence of the contents on the ground that the evidence was the product of an illegal search.

We held that the defendant had abandoned the briefcase and, thus, that the search did not violate his interests. In doing so, we relied on the meaning of abandonment in property law; we did not suggest that there is some special rule of abandonment that applies only to Article I, section 9. We defined "abandonment" as

"the voluntary relinquishment of the possession of an object by the owner *with the intention of terminating his or her ownership*. The intent to abandon must be clear and must be accompanied by some specific act of abandonment."

89 Or App at 448 (emphasis added). We held that canceling the advertisement and ceasing efforts to reclaim the briefcase constituted specific acts of abandonment. In doing so, we noted that "[n]othing the police did caused [the defendant] to [forgo] his interest in the property. He did not know that the police had opened the envelopes and had tested their contents." Rather, it was clear from the facts that the defendant had no further intention of asserting ownership of or interest in the briefcase or its contents. *Id.*

On review, the Supreme Court affirmed our decision but on a different ground. It implicitly accepted our view that abandonment under Article I, section 9, was the same as abandonment under property law and also accepted our understanding of what actions constituted abandonment. However, it concluded that the defendant had not taken those actions until after the sheriff had opened and searched the briefcase; thus, the defendant's ultimate abandonment did not support the search. The court nevertheless affirmed our decision, because the sheriff properly opened the briefcase as part of assisting the finder in carrying out her statutory duty to attempt to find its owner.

Under the property rules that *Pidcock* describes, and that are the appropriate basis for analysis under Article I, section 9, defendant did not abandon the pouch. Although the evidence would support a finding that he intentionally hid it in the police car, there is no evidence that in doing that he gave up all further intention of asserting ownership of or an interest in it. The fact that, as a practical matter, it might have proved difficult for him to retrieve the pouch later does not mean that he gave up all intention of doing so. The pouch remained his when the police found it and when they opened it. The "abandonment" thus did not give them authority to do what they did.

Even if defendant's actions could be seen as abandonment under *Pidcock*, they were the direct result of the unlawful arrest. In our decision in *Pidcock*, we emphasized

that nothing that the police did caused the defendant to abandon his interest in the briefcase. On the other hand, in *Morton* the Supreme Court pointed out that the defendant had dropped the container only after the police had begun the process of taking him into custody, with the result that it was impossible to separate the purported abandonment from the arrest. 326 Or at 470. In contrast, in *State v. McDonald*, 105 Or App 102, 803 P2d 1211 (1990), which the Supreme Court cited favorably in *Morton*, while the police were pursuing the car that the defendant was driving at an excessive speed, he dropped a small bindle of cocaine from the driver's side window. He thereafter denied any possessory interest in the bindle. His abandonment of the bindle was not the result of any improper police action.

In this case, defendant's arrest was illegal, and his purported abandonment followed from that unlawful police action. Although it did not occur immediately at the time of the arrest, as in *Morton*, it occurred during the arrest process, which continued while defendant was in the car on the way to be booked. The factual variation between the two cases is not legally significant. Because the "abandonment" was the consequence of the arrest, it was not the kind of action that permits the police to open the pouch and examine its contents.

The majority relies on *State v. Rodriguez*, 317 Or 27, 854 P2d 399 (1993), in determining that the search of the pouch did not violate defendant's rights. In *Rodriguez,* the police executed an illegal arrest warrant at the defendant's apartment. During the execution of the warrant, they obtained the defendant's voluntary consent to search the apartment and discovered a gun that led to the defendant's conviction for being a felon in possession of a firearm. The Supreme Court held that the consent was valid because the police did not exploit the illegal arrest to obtain it; a mere causal connection between the arrest and the consent was insufficient to invalidate it. *Rodriguez* has little if anything to do with this case, especially in light of the emphasis in *Morton* on whether the "abandonment" was part of the arrest process; under that approach, which is consistent with our statements in *Pidcock*, an "abandonment" that occurs during that process is constitutionally insufficient to permit a search. The question in this case is not a separate voluntary

consent but what happened during the arrest process. *Rodriguez* does not deal with that issue.

I dissent.