Argued and submitted October 28, 1998, affirmed September 15, 1999, petition for review denied February 8, 2000 (329 Or 650)

# STATE OF OREGON,
*Respondent,*

*v.*

# JOHN REEDER KAUFFMAN,
*Appellant.*

## (96-CR-2269; CA A99245)

986 P2d 696

Robert J. McCrea argued the cause and filed the brief for appellant.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

DEITS, C. J.

## DEITS, C. J.

Defendant appeals from a judgment of conviction for delivery of a controlled substance and driving under the influence, ORS 475.992 and ORS 813.010, that was entered after a stipulated facts trial. Defendant assigns error to the trial court's denial of his motion to suppress evidence obtained from the search and seizure of a duffel bag. We affirm.

■ We state the facts as found by the trial court when supported by evidence, and, when findings are not made concerning facts that were in dispute, "we will presume that the facts were decided in a manner consistent with the ultimate conclusion * * * made by the trial court[.]" *Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968).

On December 17, 1996, defendant was driving his Ford Bronco toward Coos Bay in Coos County when his vehicle left the road, drove over some railroad tracks and rolled over. Another vehicle, traveling behind defendant's, stopped and the driver and two passengers got out to see if they could help. The two passengers, both boys under the age of 18, approached defendant's vehicle. Defendant asked the boys to help him remove items from his vehicle. One of the items that defendant removed was a large blue duffel bag, which he asked one of the boys to hide in the bushes. The boy took the duffel bag a short distance from the vehicle to an area indicated by defendant and placed it in the bushes there. Several police officers arrived on the scene a short time later.

After the officers arrived, they were told about the duffel bag and that there "was a guy walking up the tracks that looked kind of weird and there were some guns laying outside the vehicle." One of the officers, Sergeant Stupfel, approached defendant while the other officer, Gale, and a fireman, searched for the duffel bag. Stupfel asked defendant what had happened and if he was all right. Stupfel requested that emergency medical technicians, who had arrived on the scene, take a look at defendant. Defendant, however, declined medical attention at that time. Stupfel then asked defendant about the blue duffel bag that had reportedly been hidden in the bushes. This inquiry took place before the bag

had been located. Defendant said, "I don't know what you're talking about."

Gale eventually found the duffel bag in the bushes. He picked it up and in doing so noticed a strong smell of marijuana. Gale then took the bag to Stupfel. As Gale approached with the duffel bag, Stupfel again asked defendant if he knew anything about the bag. Defendant again denied any knowledge of the bag. Gale said that when he arrived with the duffel bag, he asked defendant if it was his. Gale testified:

> "[Defendant] stated that, no, it wasn't his. Let's see. Then, I asked him what was inside the bag. He stated he didn't know. I said, well, should we see what was inside. He said it was up to me, so I did open it at that time and, of course, saw what I knew was in there."

The duffel bag contained approximately 27 pounds of marijuana wrapped in vinyl shelf paper. Both officers testified that the bag smelled strongly of marijuana even before they unzipped it. Stupfel then informed defendant that he was under arrest and advised him of his Miranda rights.

Defendant assigns error to the trial court's denial of his motion to suppress evidence obtained as a result of the officers' seizure of the bag. He argues that the warrantless seizure of his duffel bag was unlawful and therefore, that the evidence, "obtained by the police by seizing and observing the odor" of it, should have been suppressed.

The trial court based its denial of defendant's motion to dismiss on defendant's "consent" to the search. The trial court explained its holding:

> "Okay. The court will deny the Motion to Suppress the bag containing the marijuana. And I'm relying on the statements in the Memorandum prepared by the State in regards to the legal aspects of it.
>
> "I, also, find that my interpretation of the question, Shall we see what's in the bag by the officer and, then, the defendant's statement, that's up to you, could really be classified as a consent to search, if that really became an issue. If you left it up to the officer and his choice, in effect, was consent in itself.

"There's, also, the question that he abandoned the duffle bag by hiding it in brush. I can see no reason why the Court should not deny the Motion to Suppress."

Although the trial court mentioned the issue of abandonment as an alternative theory, it did not make an explicit holding on that theory.

■■ The first issue that we must address is whether any constitutionally protected interest of defendant was invaded by the seizure of the duffel bag. If defendant did not have such an interest, then he is not entitled to seek to have the evidence suppressed. *State v. Morton,* 326 Or 466, 469, 953 P2d 374 (1998). In *Morton,* as here, the defendant denied "any ownership interest in or knowledge of the contents of the container" at issue and, as here, there was no question that, despite her denials, the container had recently been in her possession. *Id.* at 469-70. The Supreme Court held in *Morton* that, because there was "no debating the fact that [the defendant] had possessed" the container, it followed "that she was entitled to challenge, under Article I, section 9, the police seizure of the container." *Id.*

We conclude that, under the circumstances of this case, defendant had a possessory interest in the bag. As we explained in *State v. Knox,* 160 Or App 668, 673, 984 P2d 294 (1999), "the burden of establishing the presence or absence of [possession is] not the defendant's but, as with other factual questions germane to the validity of a warrantless search or seizure under the Oregon Constitution, it rest[s] on the state." In this case, defendant denied any interest in the bag. Nonetheless, as in *Morton,* the uncontradicted evidence demonstrates that defendant had been in possession of the bag just before the encounter with the officers. As noted above, there was evidence here that defendant was seen in possession of the bag before his encounter with the police. No evidence was presented by the state to show that the duffel bag had not been in defendant's possession before the events at issue here. Accordingly, the state did not meet its burden of proving that no interest of defendant's was involved. It follows, under *Morton,* that defendant initially had a sufficient interest in the property to challenge the seizure of the duffel bag under Article I, section 9.

The state argued at the suppression hearing, and argues again here, that, even assuming that defendant had a possessory interest in the bag at one time, when he gave physical possession of the duffel bag to the two boys and asked them to hide the bag in the bushes on property that did not belong to him, he abandoned any protected possessory or privacy interest that he may once have had in the bag. It is clear that such interests may be abandoned. As the court recognized in *Morton*, "[e]ven if the defendant would have the right * * * to move to suppress the evidence of the container and its contents, that right would be lost if, for example, the facts showed that the defendant had abandoned the container before the police seized it." 326 Or at 470.

In *Knox*, we elaborated on the meaning of abandonment in this context:

> " 'Abandonment' is a voluntary relinquishment of possessory and privacy interests in an article of property that necessarily involves both legal and factual questions. For purposes of 'abandonment' in the constitutional sense under the Fourth Amendment, the question is whether a defendant, in discarding the property, has relinquished a reasonable expectation of privacy so that the seizure is reasonable. In essence, what is abandoned is not necessarily the defendant's property interest under the law of property but the reasonable expectation of privacy in the property. However, if the possessor has been coerced by illegal police conduct, courts will not consider the property to be abandoned in the constitutional sense." 160 Or App at 675-76 (citations and footnote omitted).

In *Knox*, we went on to conclude that under Article I, section 9, a similar question arises: Has defendant relinquished his privacy or possessory interests in an item under circumstances that make the seizure of the item reasonable?

In deciding if a defendant has abandoned protected possessory or privacy interests, we examine the totality of the circumstances. In *Morton*, after examining all of the circumstances in the case, the court concluded that the defendant did not abandon her interests in the container. The court reached that conclusion based on the fact that the defendant dropped the container only after the police had begun the process of taking her into custody pursuant to an invalid

arrest warrant. The court concluded: "in this instance, the state cannot separate the act of arrest from the dropping of the container[.]" *Morton,* 326 Or at 470.

■ In contrast, here, defendant's relinquishment of the bag occurred before the police arrived. After the accident, defendant gave the bag to two strangers. He did not ask them to guard it, but to hide it in the bushes. Defendant argues that, because he directed the boys to hide the bag in a specific area, he maintained control of and did not abandon the bag. We disagree. Defendant surrendered any control that he may have had in the bag when he chose to turn it over to strangers and then walk off down the railroad tracks. Once the boys had the bag, they were in a position to follow defendant's instructions, leave the bag near defendant's vehicle or, as they did, hide it and then report its location to the appropriate authorities when they arrived on the scene. In addition, as noted above, when defendant was questioned about the bag, both before and after it was discovered by the police, he adamantly denied any knowledge or interest in it.

In contrast to *Morton,* defendant's abandonment of his interests can be separated from the police action. Defendant's actions took place *before* his contact with the police. Further, defendant's relinquishment of his protected interests was not produced by unlawful or coercive police action. We hold that, under the circumstances here, defendant abandoned his privacy and possessory interests in the duffel bag and that, consequently, he was not entitled to seek to suppress evidence obtained from the police seizure of the bag. The trial court did not err in denying defendant's motion to suppress.

Affirmed.