Argued and submitted November 3, affirmed December 15, 1999

# STATE OF OREGON,
*Respondent,*

*v.*

# DOUGLAS PAUL AMAN,
*Appellant.*

(961138678; CA A101899)

991 P2d 1096

Peter Gartlan, Chief Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Public Defender.

Janet Klapstein, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

HASELTON, J.

## HASELTON, J.

Defendant appeals from his conviction for being a felon in possession of a firearm. ORS 166.270. He contends that the trial court erred in denying his motion to suppress the pistol that was the basis of his conviction. We agree with the trial court that the search that yielded the weapon was justified by officer safety concerns. Accordingly, we affirm.

On the morning of November 16, 1996, Portland Police Officer Watts was parked in a patrol car, watching a suspected drug house in northeast Portland. Watts saw a woman leave the house, jaywalk, and get into a parked pickup truck. The pickup, which defendant was driving, pulled away from the curb without signaling, and Watts made a traffic stop. Watts asked defendant for his license, registration, and insurance information and also obtained identification from defendant's two passengers, including the jaywalker, Sanchez. After running a computer check, Watts returned to the pickup and told defendant that he was free to go.[1]

Watts then asked defendant about the suspected drug house, and defendant said that he did not know if it was a drug house. When Watts asked if there were any drugs in the pickup, defendant replied, "There better not be."

Watts then asked defendant for consent to search the pickup, and defendant agreed. Defendant refused, however, to consent to a search of his person. Throughout his interaction with Watts, defendant was "completely cooperative." While searching the pickup, Watts found a purse containing a syringe holding brownish liquid and a paper bearing the name of a police officer whom the passenger, Sanchez, knew. Sanchez told Watts that the purse belonged to someone else but that she was using it and that the syringe was not hers. Watts then arrested Sanchez and took her to his patrol car.

Sanchez then told Watts that the syringe contained heroin, that the heroin was defendant's, and that she was

---

[1] In doing so, Watts asked defendant if he understood that he was free to go, and defendant replied affirmatively.

"just holding onto it for him." Sanchez also told Watts that defendant "had a gun on him right now."

Watts responded by returning to defendant, who was standing outside the pickup, and handcuffing him. Then, with another officer who had arrived as backup, Watts patted defendant down and found a Smith & Wesson .9 mm semi-automatic handgun in defendant's right front pants pocket. Watts arrested defendant for unlawful possession of a firearm. Defendant was subsequently charged with being a felon in possession of a firearm. ORS 166.270.[2]

Before trial, defendant moved to suppress the Smith & Wesson pistol on many grounds. The state responded, *inter alia*, that the patdown was justified on officer safety grounds.[3] The trial court agreed:

"I find as fact that Officer Watts was concerned about his safety and the safety of the other people present, the other, I think two officers, the two women, and Mr. Aman. And I conclude that that is a reasonable concern based on articulable facts. And the facts we have are the presence of these people at what the officer believes or knows to be a drug house. Has now found that one of the people in the car has what she acknowledges as a syringe of heroin in the purse she's using. And she—when she says she has it, it's something she shouldn't have and tells him that she's— that it's heroin, she's made all of the admissions necessary to convict her of a felony, possession of controlled substance.

"* * * * *

"And so at that point he is arresting one of the people from the car. He doesn't know at that point, there's nothing to indicate he knows what the connection is among these people. For all he knows Ms. Sanchez could have had a very close relationship to Mr. Aman. Evidently that is not the

---

[2] Watts's computer check during the traffic stop did not reveal defendant's felony record. After defendant's arrest, the police discovered that defendant had been convicted on felony drug charges in California in 1979 and 1980.

[3] The state also argued that the search that yielded the pistol was a valid search incident to arrest for unlawful possession of a weapon under Portland City Code section 14.32.010(c), which prohibits carrying loaded firearms on a public street or in a public place. The trial court rejected that theory, concluding that, until Watts actually retrieved the weapon, he did not have probable cause to believe—based merely on Sanchez's statements—that the gun was loaded.

case, at least from the evidence from Mr. Aman, but the officer had no way of knowing that. And it's obvious that Ms. Sanchez is going to be arrested, taken into custody. And I would think an officer in those circumstances would have a considerable concern that the male companion of that person, or a male companion, there is three of them, two women and a man, may react violently with that weapon. So it seems to me that the reasonable course for a police officer in that situation is to get control of the weapon."

Following a stipulated facts trial, defendant was convicted.

On appeal, defendant's sole argument is that the warrantless search that yielded the pistol was not a valid officer safety measure under the principles announced and applied in *State v. Bates*, 304 Or 519, 747 P2d 991 (1987), and subsequent cases. Defendant contends that the totality of the circumstances here did not support "a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present." *Id.* at 524. Defendant asserts, particularly, that the circumstances here are materially indistinguishable from those in *State v. Knox*, 134 Or App 154, 894 P2d 1185 (1995), *vac'd on other grounds* 327 Or 97, 957 P2d 1209 (1998), *on remand* 160 Or App 668, 984 P2d 294 (1999).

■■ The state responds that the context of this search—following the discovery of drugs in defendant's truck in a felony drug arrest—and defendant's alleged immediate access to a firearm on his person materially distinguishes this case from *Knox* and fully justify an officer safety search. We agree with the state.[4]

---

[1] The state also argues, alternatively, that the search was a valid search incident to arrest. Given our disposition, we need not address that argument.

We note, however, that, contrary to defendant's assertion, the state did not need to raise that matter via a cross-assignment of error for us to address it. As we explained in *Groshong v. Mutual of Enumclaw Ins. Co.*, 143 Or App 450, 455-56, 923 P2d 1280 (1996), *aff'd* 329 Or 303, 985 P2d 1284 (1999):

"ORAP 5.57 requires a cross-assignment of error only if a respondent challenges and seeks reversal or modification of a '*ruling*' of the trial court.'" (Emphasis in original.)

Here, the operative ruling was the trial court's denial of defendant's motion to suppress. The state does not seek reversal or modification of that ruling; rather, the state "urges us to affirm the trial court based on *reasoning* the court rejected." *Groshong*, 143 Or App at 455-56 (emphasis in original). That "right for the wrong

In *Knox*, defendant was convicted of, *inter alia*, unlawful possession of fireworks. 134 Or App at 156. On appeal, defendant contended that the warrantless search that yielded the fireworks was not justified by officer safety concerns. The undisputed facts were that Knox had been stopped for a traffic infraction, and the officer who made the stop, Sharpton, knew that Knox had an extensive history of, and reputation for, possessing weapons. In particular, Sharpton had stopped Knox on several occasions and, the last two times, Knox had been carrying a knife and a handgun respectively. Sharpton also knew that Knox had been an uncharged suspect in a homicide several years earlier and, about a year earlier, Sharpton had received a state police teletype warning that Knox had possessed firearms during a previous traffic stop. *Id.*

Sharpton, who believed that there was "an immediate danger to his safety," asked Knox, who had gotten out of his truck, if he was carrying any weapons. *Id.* Knox replied that he had a handgun locked in his toolbox. Sharpton then performed a patdown of Knox and found no weapons. Nevertheless, Sharpton continued to be concerned for his safety because Knox might be able to reach in the truck through the pickup's open window. *Id.* at 156-57. Consequently, Sharpton searched the truck's interior and found a box in the front seat. He opened the box and, under some clothing, found two handguns and a smaller box containing a large illegal firecracker. *Id.* at 157. Ultimately, Knox was charged with unlawful possession of the guns and the firecracker; he was acquitted on the firearms charge but convicted on the fireworks charge.

In appealing his fireworks conviction, Knox challenged the lawfulness of Sharpton's search of the truck.[5] The

---

reason" argument is not properly the subject of a cross-assignment of error. *Id.; see also Oak Crest Const. Co. v. Austin Mutual Ins. Co.*, 137 Or App 475, 478 n 2, 905 P2d 848 (1995), *rev allowed* 327 Or 620 (1998). To the extent that a footnoted observation in *State v. Wheelon*, 137 Or App 63, 65 n 1, 903 P2d 399 (1995), suggests otherwise, *Oak Crest* and *Groshong* subsequently and squarely disclaim that view. *See also State v. Chatfield*, 148 Or App 13, 16, 939 P2d 55 (1997) (reiterating necessity of cross-assigning error to discrete *ruling*).

[5] Knox was also charged with, and convicted of, illegal possession of controlled substances based on the discovery of a pouch of cocaine in the patrol car in which he had been transported after his arrest. The disposition of Knox's motion to suppress

state responded that that search was justified by officer safety concerns in that, given Knox's reputation for having access to weapons, the search was "reasonably necessary to prevent [him] from reaching into the truck and grabbing a weapon." *Id.* at 159. We disagreed:

> "That defendant had a reputation for carrying weapons by itself, is insufficient to create a reasonable suspicion that defendant might use them during the otherwise routine traffic stop. It is not necessarily unlawful to carry weapons; indeed, the state concedes that Sharpton had no reason to believe that defendant ever had unlawfully carried weapons.
>
> "\* \* \* \* \*
>
> "Yet the state fails to explain how defendant's mere access to weapons gives rise to a reasonable suspicion that defendant posed an *immediate* threat of using them." *Id.* at 159-60 (emphasis in original).

Fact-matching in the context of officer-safety cases, as we have observed, "can be a fool's errand." *State v. Senn,* 145 Or App 538, 545, 930 P2d 874 (1996). Nevertheless, this case is materially distinguishable from *Knox* largely because it did *not* involve a "routine traffic stop." *Knox,* 134 Or App at 159-60. By the time Watts performed the patdown and took the gun from defendant, the encounter here had escalated from a traffic stop to a felony drug arrest of one of defendant's passengers—who, in turn, told the officer that the drugs were defendant's and that defendant was carrying a gun. Those circumstances—the actual arrest of defendant's passenger on felony drug charges and the real possibility that defendant himself was implicated—greatly increased the potential that defendant would resort to force to interfere in the passenger's arrest or to avoid his own arrest. The threat of injury was, in short, far more real and "immediate" than in *Knox.* That immediacy was, precisely, the fulcrum of the trial court's reasoning. *See* 164 Or App at 351-52 (quoting court's ruling).

A second factor enhanced the immediacy of the danger and further distinguishes this case from *Knox*: Here,

---

with respect to that cocaine is the focus of the Supreme Court's opinion on review, *State v. Knox,* 327 Or 97, 957 P2d 1209 (1998), and our opinion following remand, *State v. Knox,* 160 Or App 668, 984 P2d 294 (1999).

unlike in *Knox*, the officer believed — and had every reason to believe[6] — that defendant did, in fact, have immediate, ready accessibility to a weapon on his person. In *Knox*, the officer was concerned that Knox might lunge to reach a weapon that might be inside the pickup. Here, Sanchez had told Watts that defendant "ha[d] a gun *on him right now*" (emphasis added) — and Watts reasonably credited that statement. *See* n 6.

The patdown was justified as an officer safety measure. Consequently, the trial court properly denied the motion to suppress.

Affirmed.

---

[6] Defendant asserts that Watts should have discounted Sanchez's statement as self-serving and incredible. Although that may be true as to her statements about the syringe, Sanchez had no reason to lie about the gun. Indeed, given her predicament, she had every reason to bolster her credibility and tell the truth at least in that regard.