Argued and submitted October 2, 2000, order of suppression reversed; case
remanded for further proceedings April 25, 2001

# STATE OF OREGON,
## *Appellant,*

*v.*

# SHANE RUSSELL DICKSON,
## *Respondent.*

## (98092281FA; CA A105766)

24 P3d 909

Thomas C. Patton, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Richard Maizels argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LINDER, J.

**LINDER, J.**

The state appeals from a pretrial order excluding evidence of a backpack obtained during a search, pursuant to a warrant, of a residence and its curtilage. The state argues that the trial court erred in suppressing the evidence, because the backpack was within the scope of the warrant and because defendant had abandoned any privacy interest he had in the backpack. We reverse the order of suppression and remand for further proceedings.

Police officers obtained a warrant to search the house and curtilage of a Linn County residence for "marijuana, controlled substances" and related items and documents. The warrant also named three persons to be searched, not including defendant. A team of police officers drove to the residence in several unmarked and marked vehicles, with the unmarked vehicles in the lead. As the vehicles approached the residence, defendant was leaving from the front door. He was carrying a green and black backpack over his shoulder. Defendant looked at the approaching vehicles, then took off running along the side of the house.

The officers got out of the vehicles, yelling out that they were police and that they had a search warrant. The officers' clothing also identified them as police officers. At least one officer pursued defendant. Approximately 15 to 20 feet from the house and 20 to 30 feet from the front door, defendant dropped the backpack. Officers caught defendant approximately 15 feet from where he had dropped the backpack. After the officers had placed defendant in handcuffs, one officer asked him about the backpack; defendant indicated that he was declining to make any statements.

The officers took defendant into the house and gave *Miranda* warnings to him and to the other occupants. One officer went back outside to search the curtilage. The officer recovered the backpack, opened it, and found a "substantial" quantity of marijuana.

Relying on Article I, section 9, of the Oregon Constitution,[1] and the Fourth Amendment to the United States

---

[1] Article I, section 9, provides that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable

Constitution,[2] defendant moved to suppress evidence of the backpack and its contents. The trial court granted the motion, concluding that, although the warrant authorized the search of the residence's curtilage and the backpack was found within the curtilage, the backpack was not subject to search under the warrant because it was "still identifiable to" defendant. The court reasoned that police officers saw defendant with the backpack, that they "clearly saw" him drop it, and that defendant did not abandon the backpack by dropping it, because he made no attempt to hide it; in addition, he neither denied nor admitted ownership of it. The trial court also concluded that the backpack was not searchable under any exception to the warrant requirement, such as the exception for a search incident to arrest or for officer safety purposes.

In its first assignment of error, the state argues that the trial court erred in ruling that the backpack was not subject to search under the warrant. Specifically, the state argues that the backpack was within the curtilage of the residence and that defendant relinquished any privacy interest in it by dropping it in the path of pursuing officers who had announced their intention to conduct a search and by declining to assert verbally any privacy interest in the backpack. In its second assignment of error, the state argues, in effect, that, even assuming the backpack was not subject to search under the warrant, the trial court erred in ruling that defendant did not abandon the backpack, because under the totality of the circumstances in this case, including the lawful presence and conduct of the police, defendant relinquished his privacy or possessory interest in it. Thus, the state asserts, it carried its burden to prove that a warrantless search of the backpack was lawful.

---

search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

[2] The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

In response, defendant concedes that he dropped the backpack within the curtilage of the residence. But, relying on *State v. Morton*, 326 Or 466, 953 P2d 374 (1998), he argues that he had a constitutionally protected privacy interest in the backpack that he did not abandon by dropping it and that the search of the backpack was not authorized under either the warrant or any exception to the warrant requirement.

In a suppression hearing, the state has the burden of proving that the defendant lacks a constitutionally protected privacy interest in the evidence sought to be suppressed. *State v. Knox*, 160 Or App 668, 673, 984 P2d 294, *rev den* 329 Or 527 (1999). Under ORS 133.693(4), where the motion to suppress challenges evidence seized as the result of a warrantless search, the burden of proving by a preponderance of the evidence the validity of the search is on the prosecution. We review the trial court's order suppressing the evidence for errors of law. *State v. Stroup*, 147 Or App 118, 120, 935 P2d 438 (1997). In reviewing the order, we are bound by the trial court's findings of historical fact if they are supported by evidence in the record. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). Where a trial court does not make findings on a particular issue, we presume that it decided the facts in a manner consistent with its ultimate conclusion relating to the lawfulness of the seizure and search. *State v. Coleman*, 167 Or App 86, 95, 2 P3d 399 (2000) (citing *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993)).

We begin by considering whether, at the time the backpack was seized and searched, defendant held a privacy and possessory interest in it. If we determine that he held such an interest, we then consider whether the police nevertheless were authorized to seize and search the backpack pursuant to the warrant or some exception to the warrant requirement. If, on the other hand, we determine that defendant had no such interest by reason of having abandoned that interest, we need not consider whether the backpack was within the scope of the warrant or was searchable by reason of some exception to the warrant requirement. *See* Wayne R. LaFave, 1 *Search and Seizure: A Treatise on the Fourth Amendment* § 2.6(b), 573 (3d ed 1996) (the protections of the Fourth Amendment do not extend to abandoned property).

*Morton* bears directly on our first inquiry. In that case, the defendant was arrested pursuant to a warrant. While officers were placing her under arrest, a plastic container fell from her jacket. The defendant denied ownership of the container and denied any knowledge of its contents. A police officer opened the container and found drugs and drug paraphernalia. *Morton*, 326 Or at 468-69. The Supreme Court held the search invalid. The court explained that, although the defendant "denied vehemently" any ownership or knowledge of the container, it was "uncontradicted" that the defendant "had, in fact, been in personal possession of the container * * * only moments before it came into possession of the police. * * * It follows that she was entitled to challenge, under Article I, section 9, the police seizure of the container." *Id.* at 469-70. The court also explained that the defendant had not "lost" the right to move to suppress the evidence by abandoning the container; rather, she dropped the container only after the police had begun the process of arresting her. The seizure of the container therefore was authorized only if it occurred under some exception to the warrant requirement—in that case, the exception for a search incident to arrest. The court concluded that, because the arrest warrant was invalid, the seizure and search of the container also were unlawful. *Id.* at 471. *See also State v. Tucker*, 330 Or 85, 91, 997 P2d 182 (2000) ("*Morton* demonstrates that a defendant's denial of a protected interest is not necessarily dispositive of whether the state has met its burden of proving the validity of a warrantless search.").[3]

In several cases decided after *Morton*, we have had the opportunity to elaborate on the standard applicable to abandonment of a privacy and possessory interest in property. In the first of those cases, *Knox*, the police conducted an

---

[3] *Tucker* also confirms that the state has the burden to show that a defendant lacks a protected interest in property. In that case, the defendant was a passenger in a vehicle that was involved in an accident. After the defendant was transported to a hospital and the vehicle was towed, a police officer directed the tow truck driver to search the vehicle for information about the defendant's identity. The tow truck driver opened a camera case and discovered a gun. The defendant moved to suppress the evidence; the trial court denied the motion. The Supreme Court reversed, explaining that the state had "failed to prove that [the] defendant lacked a protected interest in the * * * gun. Defendant never had the burden of asserting an interest in the item[s] * * *." *Id.* at 87-91.

illegal search of the defendant's car, then arrested the defendant and placed him in the back seat of a patrol car. 160 Or App at 670-71. Although the defendant had earlier told the police that he had money in his pocket, when police searched the defendant at the station house, his pocket was empty. The police checked the back seat of the patrol car and found a pouch containing cocaine. The defendant moved to suppress. *Id.*

Applying *Morton*, we explained that " '[a]bandonment' is a voluntary relinquishment of a possessory and privacy interest in an article of property that involves both legal and factual questions." *Id.* at 675. As to the legal standards, under the Fourth Amendment, "the question is whether a defendant * * * has relinquished a reasonable expectation of privacy so that the seizure [and search are] reasonable." *Id.* However, if the defendant's relinquishment has been "coerced by illegal police conduct," the defendant will not have abandoned his or her interest in the property in the constitutional sense. *Id.* at 675-76 (citing LaFave, 1 *Search and Seizure* § 2.6(b), 574). Similarly, under Article I, section 9, the proper inquiry is whether the defendant relinquished his or her privacy and possessory interest in the property under circumstances that make its seizure and search "reasonable." Again, however, abandonment will not be found if the defendant's relinquishment was obtained by the exploitation of illegal police conduct. *Id.* Where illegal police conduct precedes the defendant's abandonment of his or her interest, but-for a causal connection between the illegality and the abandonment is not enough to require suppression. Rather, the proper test is whether the police exploited or took advantage of their unlawful conduct to obtain the defendant's relinquishment. *Id.* at 677-78. Applying those principles, we concluded in *Knox* that the defendant had abandoned his interest in the pouch of his own volition rather than as the result of police exploitation of the unlawful search of his car. *Id.* at 679-80. Consequently, he was not entitled to suppression.

*State v. Kauffman*, 162 Or App 402, 986 P2d 696 (1999), *rev den* 329 Or 650 (2000), presented this court with another opportunity to apply *Morton*. There, the defendant crashed his vehicle. Two boys from another vehicle stopped to

help. The defendant removed a duffel bag from the vehicle, gave it to the boys, and asked them to hide it; the defendant then walked away. When the police arrived and asked the defendant about the duffel bag, he denied any knowledge of or interest in it. *Id.* at 404.

Consistent with *Morton*, we first considered whether the defendant "initially had a sufficient interest in the property" to challenge its seizure and search and whether, in the totality of the circumstances, the defendant thereafter had abandoned or "relinquished" his protected interest, thus making seizure of the bag reasonable. *Id.* at 406-07. We attributed significance to the facts that the defendant had given the bag to the boys before the police arrived and that he later had denied any knowledge of or interest in it. We rejected the argument that, because the defendant directed the boys to hide the bag in a specific area, he retained control over it. Rather, we concluded that, by doing so and then walking away, the defendant had "surrendered any control he may have had" in the bag. Based on those circumstances, we concluded that the defendant had abandoned his privacy and possessory interest in the bag and was not entitled to suppression of the evidence obtained from its seizure and search. *Id.* at 408. *See also State v. Cook*, 163 Or App 24, 32, 986 P2d 1228 (1999), *rev allowed* 330 Or 138 (2000) (although it was clear that the defendant had a possessory and privacy interest in a bag and its contents before the search, under the totality of the circumstances, he abandoned that interest, because, unlike the police conduct in *Morton*, the officer who stopped him was not "acting illegally or in a coercive manner" and because the defendant verbally disclaimed any interest in the bag).

Finally, we note that cases decided before *Morton* did not involve, and therefore did not address, the issue of the lawfulness of police conduct preceding a defendant's arguable abandonment of a privacy interest in property. Nevertheless, criteria identified in those cases as significant in determining whether an abandonment has occurred are consistent with the holdings in *Morton* and its progeny. *See, e.g., State v. Tanner*, 304 Or 312, 323, 745 P2d 757 (1987) (in general, where the possibility remains that a person will reclaim an

effect, the person's entrustment of the effect to another does not abrogate the person's privacy interest in it); *State v. Belcher*, 89 Or App 401, 404, 749 P2d 591, *aff'd* 306 Or 343, 759 P2d 1096 (1988) (for purposes of the constitutionality of a search of property, the court is "only concerned with whether the owner has left his property under circumstances which objectively make it likely that others will inspect it").

We turn to the facts of this case. Consistent with the above-described cases, we first determine whether defendant "initially had a sufficient interest" in the backpack so as to entitle him to assert a privacy and possessory interest in it. If we conclude that he did, we then consider whether defendant abandoned his interest in the backpack. In determining whether defendant abandoned his interest, we consider, among other circumstances, whether defendant's actions in relation to the backpack were the result of police exploitation of unlawful conduct. Again, the burden is on the state to prove that defendant lacked an assertable interest.

Here, it is undisputed that the backpack was in defendant's possession at the time the police arrived at the residence. Accordingly, he initially had a sufficient interest in the backpack to challenge its seizure and search under Article I, section 9, and the Fourth Amendment. However, it also is undisputed that, when defendant saw police approaching the residence, defendant ran, dropped his backpack in the path of pursuing officers, and then was caught by police about 15 paces later. The record does not show that defendant took any action indicating that he was attempting to maintain control of the backpack, such as hiding it in a place from which he might later be able to retrieve it. To the contrary, the record indicates that defendant dropped the backpack in plain sight of officers in close pursuit of him. That circumstance made it objectively likely that others would inspect the backpack; conversely, it also indicates that defendant did not intend to reclaim the backpack. Moreover, even assuming that defendant dropped the backpack in response to the arrival of the police at the residence, the police had arrived there to execute a valid search warrant. Accordingly, unlike in *Morton*, defendant did not drop the backpack as a result of exploitation of *unlawful* police conduct. Finally, the

record shows that, when asked about the backpack, defendant failed to claim any interest in it.[4]

On this record, the state met its burden to show that, under the totality of the circumstances, defendant surrendered any control he may have had of the backpack under circumstances making its seizure and search reasonable. That is, he abandoned any privacy and possessory interest in the backpack under Article I, section 9, and the Fourth Amendment. Because defendant abandoned his interest in the backpack, he was not entitled to challenge its seizure and search by the police. For the same reason, we need not consider whether the backpack was within the scope of the warrant to search the residence and its curtilage. The trial court erred in suppressing evidence obtained as a result of the seizure and search of the backpack.

Order of suppression reversed; case remanded for further proceedings.

---

[4] In this court, defendant asserts that his refusal to make any statements to the police cannot be held against him. However, in the suppression hearing, defendant did not object to the officers' testimony that he declined to assert verbally any interest in the backpack. Accordingly, we are not precluded from considering that fact in assessing whether defendant abandoned his interest in the backpack. In all events, the facts would lead to the same conclusion, even if we had to treat the record as silent on this point.