EDMONDS, S.J., dissenting.
I agree with the reasoning and the conclusions of the majority with regard to the first and third assignments of error. However, I disagree with its analysis regarding the second assignment of error because ultimately, any error is harmless. Consequently, I would affirm defendant's conviction rather than reverse.
In his second assignment of error, defendant asserts that the trial court erred under OEC 403 when it refused to redact a racial epithet expressed by defendant to the police during a video interview about what occurred during his contact with the victim at the scene of the crime.[1] On appeal, defendant *51 argues that the trial court erred by failing to balance the probative value of the evidence against its unfair prejudicial effect as required by the rule.
At the pretrial hearing, defense counsel asked the trial court to redact defendant's use of the "N word chick" from the statements that he made in the video interview:
*140 "[DEFENSE COUNSEL]: *** [Defendant] said, 'I have no idea about that, but I was on the platform and this dude punched me in the face, so I punched him and walked away.' The detective says, 'Okay.' And then [defendant] says *** 'There was this fucking, there was some nigger chick there. This dude hit me.'
"The-I'm objecting-I'm asking the court to exclude the statement regarding the N word chick as-it's a-it's-first of all, it's not really-it doesn't have anything to do with the case. When you see the video there will be a-there's another woman that no one has ever been able to track down who's sitting there at the time. But I don't think it is-certainly the admission of it, because it has nothing to do with this case, there's no evidence there was any kind of racial bias on anybody's part, I find the-just the admission of the word itself as extremely prejudicial."
In response to defendant's argument, the trial court ruled,
"The bottom line is, you know, if we start sanitizing everybody's statements-
"* * * * *
"-where does that end, you know. So, no, I'm not going ask the State or anybody else to clean up poor word choices that either he or the officers made. You know, it's a path that would lead to nothing but disaster. So, denied."[2]
The trial court did not deny defendant's motion pursuant to OEC 403, nor did it rule under OEC 401 on the ground of relevance.[3] Rather, it ruled that the law did not *141 require it to sanitize a witness's "poor choice of words." In the trial court's view, a ruling to the contrary would result in a "disaster" for trial judges-the task of "sanitizing" all witness testimony, whether the testimony is for the prosecution or the defense. I understand the nature of the court's ruling to be based on policy reasons of judicial economy and parity of treatment of witnesses; reasons that are, in the abstract, within the realm of the inherent discretionary authority of a court to govern the conduct of a trial over which it presides.[4] In general, the inherent authority of a judge presiding over a trial *52 includes the authority to make rulings that promote parity of treatment of the parties and judicial economy. Because the exercise of inherent authority of a presiding judge to make rulings is discretionary in nature, the issue under the second assignment, when properly framed, is whether the trial court exceeded its inherent authority when it refused to redact defendant's racial epithet.
The court's discretionary authority is not unfettered. Although the exercise of inherent authority for judicial economy and parity purposes embraces the notion that there may exist more than one legally permissible choice, a court may still exceed the boundaries of its discretion if it exercises its discretion in a manner that rises to the level of a denial of fundamental fairness or of the rights guaranteed to a criminal defendant, including the right to a fair trial. In this case, the trial court's ruling had the effect of admitting evidence that had no probative value in violation of OEC 402. But the admission of inadmissible evidence does not in *142 itself warrant reversal of defendant's conviction. Therefore, the question becomes whether the trial court's ruling constituted harmless error.
Defendant argues on appeal that the admission of the "N" word was "highly inflammatory." According to defendant,
"[a]dmission of the challenged evidence invited the jury to focus on defendant's racial views, which were not a material issue. There was a substantial risk that the jury would use defendant's choice of words to conclude that he was generally a bad person, which could lead to two improper conclusions: (1) defendant acted in conformity with his general bad character during the charged acts, or (2) he was a bad person who needed to be punished regardless of his guilt of the charged offenses."
In resolving the question framed by defendant's argument, some well-recognized legal rules apply. For example, evidentiary error is not presumed to be prejudicial merely because inadmissible evidence is admitted. OEC 103(1).[5] It is defendant's responsibility on appeal to demonstrate that the error was not harmless. State v. Lotches , 331 Or. 455, 487, 17 P.3d 1045 (2000), cert. den. , 534 U.S. 833, 122 S.Ct. 82, 151 L.Ed.2d 45 (2001) (holding that the defendant failed to show that any error was likely to have affected the verdict when there was no reasonable inference that an excluded audio tape mattered to the defendant's self-defense theory). Also, Article VII (Amended), section 3, of the Oregon Constitution requires appellate courts to affirm, notwithstanding evidentiary error, if there is little likelihood that the error affected the verdict. State v. Davis, 336 Or. 19, 32, 77 P.3d 1111 (2003).
In light of the above rules, I turn to the facts in this case. First, the disputed evidence itself constitutes an isolated reference in a videotape in which defendant explained his version of the events leading up to him being charged. The videotape that was played to the jury was redacted for other reasons, and what was apparently submitted to *143 the jury is reflected by a 12-page transcript.[6] Defendant's use of the "N" word appears on only page 4 of the transcript. Moreover, defendant and the victim are not African Americans, and no one contended at trial that race played a role in their conflict. The unidentified bystander described by defendant in his statements to the police was apparently an African American, although at one point in the statements, defendant says "I don't know if she was black or white, but she acted black." Later, he said, "I think she was black." Regardless, not only was the bystander not involved in the conflict, but she also was not a witness at trial. *53 During the trial, the state called seven witnesses, including five law enforcement officers, one medical expert, and one eyewitness to the assault, Ruiz. The victim did not testify. Ruiz, the only witness who was present when the assault occurred, testified that he saw defendant and another person in a shoving match. According to Ruiz, the following occurred:
"[RUIZ]: No. I just looked back, and that's when I see the person stabbing the other person and saying, 'You don't punch me in my face you mother'-you know. I seen the person was stabbing the other one and saying 'You don't punch me in my face you motherfucker.' Sorry.
"[THE COURT]: It's all right. We've heard it all here.
"[RUIZ]: Yeah, I know."
Later in his testimony, Ruiz explained that the person who had been stabbed had nothing in his hand at any point in time during the conflict.
On cross-examination, Ruiz was not asked about his observations regarding whether the victim had anything in his hand during the time that the victim argued with defendant. Rather, the tenor of counsel's questions on cross-examination appears to concede that defendant had stabbed *144 the victim, but sought to leave room for a self-defense theory based on what Ruiz did not see. At the close of the cross-examination of Ruiz, the trial court afforded an opportunity to the jury to ask questions, apparently through the jury submitting them in writing to the court. Thereafter, according to the transcript, the court asked Ruiz, among other things, whether there was a third person involved in the fight between defendant and the victim, whether the witness overheard what was said during the argument, and whether the witness "[saw] what the lady who was there did after the stabbing." Ruiz responded that there had been a third person there but "then that person left" before the fight. He said that he did not overhear any part of the argument, and as to the lady at the scene, "She just walk (sic ) away."
After the state rested its case-in-chief, the defense rested without calling any witnesses. Neither party emphasized or referenced the use of the "N" word during its closing arguments. In his closing argument, defense counsel told the jury that "it's all on video," referring to the surveillance video of the scene where the fight occurred.
"So [defendant] had to make a decision. This guy just punched me in the face, so should I wait to see what he's going to do next *** Should I do that, or should I do something to protect myself, and that's what he chose to do."
The state countered in its rebuttal argument that defendant could not have had a reasonable belief after the victim hit him that he was entitled to use deadly force to defend himself.[7]
I conclude based on the above facts from the record that there is little likelihood that defendant's use of the "N" word affected the jury's verdict. The only contested issue in the case was self-defense, and the most probative evidence on that issue came from Ruiz and the surveillance tape, and not from the evidence of the police interview video. The eyewitness testimony of Ruiz and the contents of the surveillance videotape of the actual assault itself provide unrebutted evidence of what occurred, despite defendant's claim *145 to the police during the interview that he only punched the victim. Finally, the objected-to word is completely isolated from the evidence that was determinative of the case. Taking into consideration the entire record, there is little likelihood that the failure of the court to redact defendant's use of the "N" word in his statements to the police affected the jury's rejection of his argument that he acted in self-defense.
In the absence of evidence in the record that supports counsel's argument that the court's ruling "invited the jury to focus on defendant's racial views," defendant is left with a per se prejudice argument. According to that argument, a trial court's failure to redact the "N" word from testimony will *54 always cause prejudice and will always constitute reversible error in any trial in which the "N" word occurs. But that argument necessarily fails because, as a matter of law, prejudicial evidentiary error is never presumed. OEC 103(1).
For these reasons, I would hold that there is little likelihood that the failure of the trial court to redact defendant's use of the "N" word affected the jury's verdict. Therefore, I dissent.

OEC 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

Defendant did not expressly ask the trial court to decide defendant's motion under OEC 403, nor did he ask the court to perform the weighing process of probative value against unfair prejudice contemplated by the rule. Indeed, he told the court that the "N" word had "nothing to do with this case, *** there's no evidence *** [of] any kind of racial bias on anybody's part." For purposes of this opinion, however, I assume that defendant's assignment of error was adequately preserved under ORAP 5.45 and that the OEC 403 balancing process is applicable, even when the disputed evidence to be weighed against unfair prejudice has no probative value. But see State v. Carrillo , 108 Or. App. 442, 445-46, 816 P.2d 654, rev. den. , 312 Or. 527, 822 P.2d 1196 (1991) (holding that an objection on the grounds of hearsay and relevance does not preserve a claim of error made under OEC 403 ).

OEC 402 provides, in part, that, "[e]vidence which is not relevant is not admissible." OEC 401 provides that " '[r]elevant evidence' means evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The trial court's reasoning is based on the need for pragmatism. Defendant's motion to redact was made during a pretrial hearing, and the argument he made to the trial court appears to assert that the use of the "N" word is inherently prejudicial. The trial court could well have understood defendant's argument similarly. On review, we have no record before us upon which to make the kind of ruling by judicial fiat that defendant appears to argue for. To the contrary, the trial court could have reasonably believed that among some segments of our society, the "N" word is used commonly as a descriptive term without discriminatory meaning or intention. Moreover, I am aware of no rule or law that requires a trial court to sanitize a witness's own words from evidence that is part of the operative facts of the case to make the declarant look better before a jury. Nonetheless, defendant is entitled to judicial review to determine whether the admission of nonrelevant evidence under the circumstances of this case caused him prejudice as he urges on appeal.

OEC 103(1) provides, in part, that, "[e]vidential error is not presumed to be prejudicial. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected ***."

The state contends that, "[a]lthough it is clear that part of the video of the detectives' interview of defendant was played for the jury at trial, the record does not disclose whether the jury actually heard defendant's [N word] reference." The majority opinion does not address the state's argument. For purposes of this opinion, I assume that the jury heard defendant's statement. However, if defendant's conviction is to be reversed under the second assignment, then it is essential to that disposition that the record demonstrate that the jury heard the statement.

According to the surveillance video, the victim struck defendant, the victim backed away with his hands in a defensive posture, defendant then retrieved a knife from his waist band, re-initiated contact with the victim, and stabbed him.